WILLETTE, Appellant, vs. RHINELANDER PAPER COMPANY, Respondent.

*February 24—March 14, 1911.*

*Master and servant: Injury from unguarded gearing: Statute construed: Liability not absolute: Duty of master: Negligence: Defenses: Contributory negligence: Questions for jury: Special verdict: Inconsistent findings: Appeal: Reversal: New trial, when ordered: Excessive damages: Remission of part.*

1. Sec. 1636*j*, Stats. (1898), did not create a rule of absolute liability. It does not displace the common-law standard of care of the master or that of the servant; sec. 1636*jj*, Stats. (Supp. 1906: Laws of 1905, ch. 303), was enacted in view of sec. 1636*j* not increasing the care of the master in any of the particular cases beyond the standard of the great mass of mankind under the same or similar circumstances, nor abolishing the defense of contributory negligence, strictly so called, or the special form thereof denominated assumption of the risk.

2. In sec. 1636*jj* the legislature recognized the aforesaid meaning of sec. 1636*j* by characterizing failure to comply therewith as "negligent omission," etc., and recognized its adjudicated purpose as to contributory fault and assumption of the risk, by abolishing competency to establish the matter by a single named circumstance.

3. In respect to sec. 1636*j*, except in situations obviously dangerous, if an employer furnishes such a guard or fence as is in general use among employers of ordinary care under the same or simi-

lar circumstances, he has discharged his duty,—the dangerous machinery is securely guarded or fenced within the meaning of the statute,—in that, when all ordinary care to that end shall have been exercised by the master his statutory duty has been performed.

4. The statute leaves, primarily, the master to determine whether a situation needs guarding or fencing in contemplation thereof, and if so the means and manner of complying therewith, subject to the duty, which is absolute, to exercise all ordinary care in respect to the matter.

5. When a statute commands the doing of some act by one person for the personal safety of another, without prescribing any penalty for the benefit of the latter in case of his being injured by breach of such command, such breach is negligence *per se*, as matter of fact, of the grade of want of ordinary care with incidental liability, but rebuttable by proof to the contrary, the same as in ordinary cases of negligent injury, in the absence of express language to the contrary.

6. The language of sec. 1636*jj* abolishing contributory conduct of a claimant for compensation for an injury within the statute, extends only so far as otherwise acceptance of the danger would be provable by knowingly submitting thereto.

7. Failure to comply with sec. 1636*j* of the statutes in any situation, is not excusable because it is not practicable to so guard or fence as to render such situation reasonably safe for employees to discharge their duty in the exercise of ordinary care.

8. The effect of the statute is to prohibit the use of such machinery as is mentioned therein, unless by the exercise of ordinary care it can be rendered reasonably safe for employees in the discharge of their duty in the exercise of like care.

9. It appearing conclusively from the evidence—that an employee received a personal injury by coming in contact with machinery in the discharge of his duty, and the jury having found that such machinery was so located that the employer in the exercise of ordinary care ought reasonably to have apprehended some employee in the exercise of like care might be injured thereby, and that he failed to guard or fence the machinery in respect to such danger, and that the employee was not guilty of any want of ordinary care in respect to the matter—the employer is liable as matter of law.

10. In the circumstances stated in the foregoing a finding negativing that failure to comply with the statute was the proximate cause of the injury is inconsistent with the other findings and on motion should be changed.

11. In such circumstances a finding on the subject of proximate cause
is nonessential since such element is shown as matter of law
from the other facts.

12. In like circumstances if the negative answer is predicated merely
on impracticability to guard or fence without the aid of some
implement which was not furnished, then it is equivalent to an
affirmative finding.

13. On reversal of a judgment the cause is to be remanded for a new
trial only in case justice requires it, otherwise the court, in har-
mony with the spirit of the Code, will, if practicable, make such
disposition of the case as to terminate the litigation.

14. The plaintiff, in an action where there has been a trial and an
excessive verdict, may be permitted to take judgment for a less
sum without consent of the defendant, without prejudicing the
latter's right of a jury trial, if the optional amount be placed
as low as any jury of fair men rightly instructed would within
a reasonable probability place it.

15. In case of an injury to a man of forty-five years of age, depriving
him of the first, second, and part of the third finger of the left
hand, causing him the usual amount of pain in such cases, from
which he recovered in the course of about two and one-half
months so as to return to work at full wages, and without much
loss of working capacity for one of his station and a common
laborer without future prospects of change in that regard, ca-
pable at the best of earning $65 per month,—an award of $4,500
is clearly excessive.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Oneida
county: A. H. REID, Circuit Judge. *Reversed.*

Action to recover damages for a personal injury. The fol-
lowing is a summary of the claimed facts upon which the re-
lief was demanded: Plaintiff for some time before he was in-
jured, as hereafter alleged, was employed by defendant as
oiler. One machine he attended was a large electrically op-
erated pump. There were two horizontal shafts in an iron
frame resting on an iron base, the top of which base was about
eight inches from the floor. The distance between the inner
side of the journal boxes of the shafts was about two feet.
One shaft was located on the front of the frame about six
feet from the floor and the other was above and back of it in

the center of the frame about eight feet from the floor.
Power was applied to a pulley on the lower shaft.   On each
end of that shaft was an eight-inch gear which meshed with
and communicated power to forty-five-inch gears on the up-
per shaft.   There were two pitmans, one on each large gear
connected therewith by a wrist pin and connected at the lower
end with a pump plunger.   In operation, the large gears
made about forty-five revolutions per minute.   The bearings
on the shafts and the wrist pins needed frequent attention by
the oiler.   The gears on the upper shaft were wholly un-
guarded or fenced.   On each of the small gears there was a
guard on the front side and down and under to near the point
where it meshed with its companion large gear.   The jour-
nals of the upper shaft and wrist pins were out of reach of the
oiler while standing on the floor.   No appliance was pro-
vided with which to overcome this difficulty.   During the
first of appellant's work there was a pipe stand beside the
pump frame forming two steps by means of which he was
accustomed to ascend so as to reach the journal boxes and
wrist pins.   Several weeks before he was injured defendant
caused such stand to be removed.   Thereafter plaintiff had·
no way of reaching the places on the upper shaft to be oiled
or examined but to stand on the pump base, take hold of some
projecting point of the frame or of its connections, and so lo-
cated reach up as high as practicable.   By so doing the points
needing attention could be looked after with some difficulty.
The first time after removal of the pipe stand plaintiff had
occasion to examine one of the wrist pins to see if it was
overheating was the time when he was injured.   It was in the
nighttime.   It seemed to him the pin on the east side of the
pump needed attention.   He stepped upon the base of the
pump which, as usual, was oily affording an insecure footing.
He placed one foot firmly upon the head of a projecting bolt
in order to obtain the best footing practicable.   He then with
his left hand laid hold of the outside of the guard near the

lower part of the small gear, that being a convenient place for a handhold.   He then with his right hand endeavored to take the temperature of the wrist pin.   In doing so without fault on his part his foot slipped, causing his left hand to slide downward and inward on the guard aforesaid till it reached the point where the large wheel revolved toward and passed behind such guard at which point the hand was caught between the gear and the guard so injuring it that he lost the index and second finger.   The injury was caused by failure of defendant to so guard or fence the gear as to prevent its being dangerous to plaintiff in the performance of his duties. Some time after the accident plaintiff by reason of the injury aforesaid was obliged to have a part of the third finger amputated.

There were some facts stated as to the particulars of plaintiff's damages and there was an appropriate allegation respecting the giving of notice as required by statute.

Defendant answered admitting the injury and service of notice alleging that the cause of the injury was absence of any facilities for safely reaching the points to be oiled and insufficient length of the gear guards.   The allegations respecting negligence of the defendant were all put in issue and contributory negligence was pleaded.

There was evidence tending to prove the allegations of the complaint and other matters not specially pleaded but referred to in the verdict.

The jury found as follows: The defendant did not provide a step-ladder for use in doing the oiling.   The gearing was so located as to be dangerous to the oiler in the discharge of his duties while using ordinary care.   Defendant failed to have the gearing securely guarded or fenced.   It was not practicable to guard the gearing so as to render it reasonably safe for plaintiff to perform his duties as oiler without a ladder.   Failure to securely guard and fence the gearing was not the proximate cause of the injury.   Plaintiff was not guilty

of a want of ordinary care proximately contributing to his injury. It will require $4,500 to fairly compensate plaintiff for his damages.

Numerous exceptions were saved to rulings made before and after verdict. Judgment was rendered notwithstanding the verdict in favor of the defendant, the court construing the same as requiring that result. Plaintiff appeals.

For the appellant the cause was submitted on the briefs of *Holland & Lovett.*

For the respondent there was a brief by *Kreutzer, Bird, Rosenberry & Okoneski,* and oral argument by *C. B. Bird.*

MARSHALL, J. Did the trial court err in awarding judgment to the defendant? That is the main question though some minor propositions are involved. To properly consider the major matter the purpose of sec. 1636*j,* Stats. (1898), as settled by judicial construction, must be appreciated. There is little room for want of such appreciation in view of the numerous instances in recent years where the court has dealt with the matter. In the aggregate almost every conceivable phase of the subject has been judicially treated and some of them over and over again, yet the record here shows there is some misunderstanding.

The vital words of the statute are, "all belting, shafting, gearing, . . . which are so located as to be dangerous to employees in the discharge of their duty shall be securely guarded or fenced." If the statute does not create a higher duty than that at common law it prescribes a statutory requisite of ordinary care on the part of the master and by necessary implication prescribes conditions which will give rise to a *prima facie* inference of negligence as matter of fact. It does not create a rule of absolute liability.

It seems the court at first was inclined to hold that a violation of the statute establishes negligence creating liability defendable against only by contributory negligence in

the ordinary sense, not including that special form denominated assumption of the risk. It was held in *Klatt v. N. C. Foster L. Co.* 97 Wis. 641, 73 N. W. 563, thus:

"Absence of the guard was negligence *per se*. . . . A failure to perform the duty so imposed constitutes actionable negligence at the suit of a person of that class, injured by such failure of duty, without contributory negligence on his part." "Where a statute requires an act to be done or abstained from by one person for the benefit of another, then an action lies in the latter's favor against the former for neglect in such act or abstinence, even though the statute gives no special remedy. The imposition of a penalty by the statute does not take the place of the remedy by suit for negligence, unless the penalty be given to the party injured in satisfaction for the injury."

That was but a redeclaration of what was said in earlier decisions. *McCall v. Chamberlain,* 13 Wis. 637; *Dunnigan v. C. & N. W. R. Co.* 18 Wis. 28; *Atkinson v. Goodrich T. Co.* 60 Wis. 141, 18 N. W. 764; *Toutloff v. Green Bay,* 91 Wis. 490, 65 N. W. 168.

It may be that all who concurred in *Klatt v. N. C. Foster L. Co., supra,* did not intend to hold that mere failure to comply with the statute was sufficient to create an inference of culpable negligence as matter of law, instead of an inference of fact in that regard rebuttable by showing that the failure did not involve any want of ordinary care in fact, as use of the term "negligence *per se*" would indicate, or intend to hold that the purpose of the statute or its necessary effect is to preclude defeating an otherwise meritorious claim on the ground of assumption of the risk, as use of the term "actionable negligence at the suit of a person of that class, injured by such failure of duty without contributory negligence on his part," might well, as an original proposition, be said to indicate. But any obscurity in that respect was removed by subsequent decisions.

The logic most favorable to employees was carried forward into *Burns v. C., M. & St. P. R. Co.* 104 Wis. 646, 80 N.

,W. 927, without clearing up any existing uncertainty. But whether the legislative purpose was to abolish the defense of assumption of the risk was negatived by *Helmke v. Thilmany,.* 107 Wis. 216, 83 N. W. 360, opinion by the then Chief Justice, declaring, in most emphatic language, that neither the defense of contributory negligence nor assumption of the risk was affected by the statute, citing *Thompson v. Edward P. Allis Co.* 89 Wis. 523, 530, 62 N. W. 527, and several previous cases under similar statutes. Thus the defenses were referred to as distinct, rather corroborating the idea that when *Klatt v. N. C. Foster L. Co., supra,* was written it was thought that only the defense of contributory negligence was, preserved.

It should be noted, in passing, for accuracy of history, that neither in *Helmke v. Thilmany, supra,* nor any case cited therein was assumption of the risk necessarily mentioned or involved. The sole subject of controversy was contributory negligence, strictly so called. For myself, though I concurred in the decision, as I now read the case it seems contributory negligence was mistaken for assumption of the risk. I may well further observe that the present Chief Justice and Justice DODGE dissented upon the ground, as would appear by language used, that the turning question was assumption of risk though it would seem to the writer contributory negligence was really in mind. The distinction between the two phases of conduct is so shadowy, it is not to be wondered at that one is sometimes spoken of when circumstances more clearly characterizing the other are in mind.

However, *Helmke v. Thilmany, supra,* was followed in *Kreider v. Wis. River P. &. P. Co.* 110 Wis. 645, 86 N. W. 662; *Upthegrove v. Jones & Adams C. Co.* 118 Wis. 673, 96 N. W. 385; *Walker v. Simmons Mfg. Co.* 131 Wis. 542, 111 N. W. 694, firmly establishing as a rule of construction of sec. 1636*j* the doctrine announced as stated, though it seems to the writer, looking backward, that in these cases the dis-

tinction between the two phases of contributory negligence, one of which strictly speaking is not such negligence at all, was not kept clearly in mind. In most of them, possibly all of them, assumption of the risk was not necessarily involved, in the judgment of the writer. That this challenged the attention of the lawmaking power leading to the act of 1905, passed before the last case cited originated, is most natural.

The foregoing leads up to the other feature of sec. 1636$j$ which more particularly concerns this case, viz., whether its purpose was to make duty to guard, when otherwise the situation would be dangerous to employees in the discharge of their duties, absolute, rendering failure to comply, under all circumstances, culpable negligence as matter of law, as is perhaps inferable from *Klatt v. N. C. Foster L. Co.* 97 Wis. 641, 73 N. W. 563, instead of inferable as matter of fact only and so rebuttable by proof of guarding or fencing in the ordinary way, that not being obviously a dangerous way, and leaving to the employer some reasonable measure of discretion as to whether the situation in any case is within the statute and if so as to the manner and means of complying therewith.

On the subject last referred to the second alternative suggested was, seemingly, adopted as the test of actionable negligence in *Guinard v. Knapp-Stout & Co. Co.* 95 Wis. 482, 70 N. W. 671. The statute must have been there in mind because the situation dealt with was clearly within it, though it was not mentioned. It was held that the test of *prima facie* liability on the ground of negligence fixed by law was whether all safeguards were provided which the great mass of mankind ordinarily furnish under the same or similar circumstances; that the employer may not be required to be wise beyond that standard, and, in effect, that any other standard would be impracticable and unreasonable and might render the success of any legitimate enterprise impossible. That was in terms or effect repeated in many subsequent cases

dealing with statutory situations, though, it must be admitted, generally speaking, that the statute was not referred to, showing definitely that it was in mind.    Some of the cases—enough to indicate quite clearly the type of all—were mentioned in the recent case of *West v. Bayfield M. Co.* 144 Wis. 106, 128 N. W. 992, where the doctrine of the *Guinard Case* was emphatically held to apply to the statute and that such had become the settled law before the act of 1905.    It was thought that the long line of decisions referred to must have been made in view of the statute and that the rule thus developed, right or wrong, had become so firmly established as a part of the written law as if literally embodied in it.    Out of the large number of decisions referred to—to the end that the obscurity, if any existed, might be cleared up—this was evolved as expressing the legislative intent: Except as to situations obviously dangerous "if the employer furnish such a guard as is in general use among employers of ordinary caution in the same line of business and under the same circumstances, he has discharged the duty imposed upon him, and the guard so furnished is in a legal sense reasonably safe and the dangerous machinery has been securely guarded within the meaning of the statute.    This rule of law requires the master to exercise ordinary care in providing a guard or fence for such machinery as is required to be guarded or fenced."    144 Wis. 117.

The latter expression was grounded on *Powalske v. Cream City B. Co.* 110 Wis. 461, 86 N. W. 153, approved in *Hamann v. Milwaukee B. Co.* 136 Wis. 39, 116 N. W. 854; *Miller v. Kimberly & C. Co.* 137 Wis. 138, 118 N. W. 536. The idea therein conveyed is that whether a situation needs guarding or fencing for security as to dangers to employees must, necessarily, be a matter of judgment, as well as the extent and manner of guarding or fencing; and, as the law leaves that to the employer, it cannot be expected of him that he must exercise more care and judgment in respect to when

and when not to guard or fence, or a higher degree of care in executing the conclusion, in case of it being in favor of the protection, than is generally brought to bear on similar situations by the great mass of mankind under the same or similar situations; nor that after he has used such judgment he shall nevertheless be liable criminally and civilly for consequences of danger which could not have been reasonably foreseen from the standpoint of ordinary human foresight—in that respect that the statute should have the ordinary construction of ordinary penal provisions which do not express, unmistakably, a legislative purpose to deal with individuals, engaged in legitimate business with extraordinary severity. It was thought this not only followed quite clearly the letter of many previous decisions but the logic of the whole body of unwritten law in this state respecting similar situations.

Even where by written law it was first provided that a railroad should fence its right of way or in default thereof be liable for damages to any person injured, it was held that the defense of contributory negligence was not abrogated and that the requirement was the exercise of a degree of diligence no greater than that of a town in respect to a highway. *Curry v. C. & N. W. R. Co.* 43 Wis. 665. It may well be said in passing that the element of reasonable anticipation is held to be essential to actionable negligence in highway cases the same as others dependable upon breach of duty to exercise ordinary care. *Fehrman v. Pine River,* 118 Wis. 150, 95 N. W. 105. In view of the doctrine of the *Curry Case* the railroad statute was amended so as to substantially, in express terms, abrogate the defense of contributory negligence in actions for damages for failure to fence a railway right of way; *Quackenbush v. Wis. & M. R. Co.* 62 Wis. 411, 22 N. W. 519, it being appreciated that unmistakable language was necessary to effect that result.

In *Dugan v. C., St. P., M. & O. R. Co.* 85 Wis. 609, 55 N. W. 894, it was held, in a similar situation as above, that

the defense of contributory negligence may be expressly given
by statute and can only be taken away by express or unmis-
takable legislative language. So in case of the situation, in
absolute terms, of a duty to do some act for the safety of
others, even accompanied by an absolute liability for failure
to perform the duty, taking the statute literally, and without
going further the court will read out of it as having been
necessarily intended, an exception saving the defense of con-
tributory negligence unless to do so would, seemingly, actu-
ally violate the intent of the written law.

· The general doctrine requiring the master absolutely to
furnish his employee a reasonably safe place to work, has not
been carried to the extent of making that duty stand the test
of what a jury of twelve men may conceive to be required
from their own viewpoint of reasonable safety, but the test
of what such a jury may conclude is consistent with ordinary
care which is said to be no greater than what is customarily
done in the same or in similar situations. *Boyce v. Wilbur L.
Co.* 119 Wis. 642, 97 N. W. 563.

The safe-place rule of the common law is as absolute as the
statute in question and statutes in general creating duties re-
specting the personal safety of individuals, and yet, it will
be seen by investigation that negligence is the foundation
principle governing all, both from the standpoint of the em-
ployer and that of the employee, and that the general rules
of what constitutes negligence are supposed to be embodied in
the written law in the absence of unmistakable language in
such statutes to the contrary.

Much more might be said on the subject above discussed
but this is not necessarily the occasion for it. Hardly any
need of it is liable to be imperative in any situation in view of
the full discussion and establishment of definite rules in re-
spect to the matter drawn as supposed from the letter and
logic of many decisions, in *West v. Bayfield M. Co.* 144 Wis.
106, 128 N. W. 992. True, there was room for fair differ-

ence of opinion, in view of the initial declaration respecting the statute in *Klatt v. N. C. Foster L. Co.* 97 Wis. 641, 73 N. W. 563, and expressions in opinions here and there following that case. One with firm convictions, from an original standpoint, as to the intent of the legislature, might read such expressions, consider the trend of decisions, and come fairly to one conclusion, and another with or without a different view of the written law from such original standpoint might survey the body of unwritten law concerning it in the light of the logic dominating the whole, that it is failure to do that which is in general supposed to be efficient under the same or similar circumstances, which constitutes the real derelict of the unwritten law and that of the statute as well, in the absence of unmistakable language to the contrary, and might come to a different conclusion, as was the case in *West v. Bayfield M. Co., supra,* where doubtless all that could well be said from either viewpoint was expressed and the state of the law definitely determined.

Facing what has been said it is not difficult to discover the intent in sec. 1636*jj* which particularly concerns this case. It was doubtless seen by the legislature that neither the defense of assumption of the risk nor that of contributory negligence was disturbed by sec. 1636*j*, nor was the rule of absolute liability—liability regardless of fault by the ordinary standard of human foresight—substituted for the ordinary standard of care; that efficient negligence on one side was still the ground of liability and freedom from such negligence, in the broad sense, the condition of enforcing such liability. So with a view of removing any possible uncertainty as to the precise test of duty and removing at the same time to some extent common-law conditions of enforcing it, the new section was added to the written law as sec. 1636*jj* providing thus:

"In any action brought by an employee or his legal representative to recover for personal injuries, if it appear that the injury was caused by the negligent omission of his employer to

guard or protect his machinery or appliances, or the premises or place where said employee was employed, in the manner required in the foregoing section, the fact that such employee continued in said employment with knowledge of such omission, shall not operate as a defense." Laws of 1905, ch. 303.

Note the significant words in the new section *"negligent omission* of his employer to guard," etc. Obviously it was not intended to recognize two classes under sec. 1636*j*, one guilty of failure to guard, regardless of negligence in the matter, and one negligently failing to guard. Any failure under sec. 1636*j* was evidently in contemplation as a "negligent omission to guard," that term being used so that the written law would in its letter conform to the construction given by this court to such section.

If the desire of the lawmakers had been to increase the duty of employers to the point inferable, in one view from *Klatt v. N. C. Foster L. Co., supra,* they might easily have done that. If the thought was that the existing rule of the statute did not contemplate the ordinary standard of human duty to be the test of liability, certainly the language used would have been that of the section to which it was supplementary, viz.: "if it shall appear that the injury was caused by the omission of his employer to guard," etc., instead of by "the negligent omission to guard," recognizing negligence, by necessary inference, to be the dominating feature of the existing law. Again, if it had been thought to wholly abolish the defense involving conduct of the injured person the legislature might easily have used language expressing that purpose instead of "the fact that such employee continued in such employment with knowledge of such omission will not operate as a defense"—that is, the one fact commonly held to show assumption of the risk as matter of law and so establish a defense, shall not so operate. To that extent the court has held the defense of contributory negligence abolished, but the law is otherwise unchanged by the new section. *Klotz*

*v. Power & M. M. Co.* 136 Wis. 107, 116 N. W. 770; *Reffke v. Patten P. Co.* 136 Wis. 535, 117 N. W. 1004; *Lind v. Uniform S. & P. Co.* 140 Wis. 183, 120 N. W. 839; *Monaghan v. Northwestern F. Co.* 140 Wis. 457, 122 N. W. 1066.

In all of the cases cited the idea that negligent omission of duty is the fault dealt with by the statute is recognized. In *Klotz v. Power & M. M. Co.,* the element of reasonable anticipation, so vital to actionable negligence ordinarily, was clearly recognized as essential to characterize actionable fault under the statute. In the next case negligent omission of duty was treated as the dominating essential. In the next the question of whether under all the circumstances, guarding was reasonably necessary from the standpoint of what is ordinarily done in such cases was suggested as vital. That feature is not readily seen in the last case without referring to the instructions, no part of which are preserved in the reports, though the purport thereof one can reasonably infer from the opinion.

Looking at the record here in the light of the foregoing, whether error was committed in awarding defendant judgment instead of the plaintiff and if the latter, whether the case should be so disposed of as to render a new trial unnecessary does not seem to be fraught with much difficulty.

The jury found that the gearing was so located as to be dangerous to employees in the discharge of their duty. Did they find the circumstances such that the failure to guard was a negligent failure as provided by sec. 1636*jj* in its letter and by sec. 1636*j* as the same has been construed? No question was submitted specifically on that point, but the matter was covered by the manner in which the jury were instructed regarding the interrogatory as to whether the gear was so located as to be dangerous to employees in the discharge of their duty. The judge was very particular on this point, seemingly, fully appreciating that whether the situation was within the statute was not dependable upon what the jury

from their point might think, that is by a standard of their own; but what they might conclude from the evidence, testing the case by the standard of ordinary care given to them in this language:

"By dangerous as here used is meant such condition existing that an ordinarily prudent and intelligent employer, under all the circumstances stated in the question, ought reasonably to have foreseen that an injury to the oiler might probably occur by reason of the location and condition of such gearing."

Generally speaking such an instruction should not be confined to the particular employee but include all employees in the particular factory. That is not material here because no one except the oiler could, within reason, have been thought of as likely to come in contact with the uncovered gear. So it will be seen that the jury found the condition to have been respecting the duty to guard, within the statute according to the construction thereof in *West v. Bayfield M. Co., supra.*

The next question covered the subject of whether the statutory duty was performed. In respect thereto the jury found that defendant failed "to have said gearing securely guarded or fenced at the time of plaintiff's injury." The instruction at this point made prominent the idea that negligence was the controlling feature of actionable fault. The court said, "a gearing is securely guarded or fenced when it is so guarded or fenced that it would not be dangerous to any employee required to work in its vicinity if such employee uses ordinary care for his own safety."

Here we may well remark, in passing, that while the instruction was sufficient for the case it was too restrictive to be a safe model for all cases. So far as necessary to this case it followed *Powalske v. Cream City B. Co.* 110 Wis. 461, 86 N. W. 153; *Miller v. Kimberly & C. Co.* 137 Wis. 138, 118 N. W. 536; and similar cases. The language of the statute is not that the particular situation shall be

guarded against dangers to employees "required to work in its vicinity" but to guard where "dangerous to employees in the discharge of their duties"—any employee as said in effect in *Miller v. Kimberly & C. Co.* whom the master would have reasonable ground to anticipate might in the exercise of ordinary care be otherwise jeopardized in his personal safety.

So the jury found the statutory requisite of culpable negligence, viz., duty to guard—because it was negligence not to do so in that, as said in *Powalske v. Cream City B. Co.,* "a person of ordinary intelligence and prudence, circumstanced as defendant's officers or those having charge of its business were," would have apprehended that otherwise it "might probably cause a personal injury to some employee while in the discharge of his duty"—and failure to guard. That would seem to have left, in due course, only the question of whether the *culpa* in an unbroken chain of circumstances reached the point of injury and efficiently produced it—the fault having the essentials of proximate cause, most of which were covered by conclusions already reached—without any efficient contributing negligence of appellant, distinct from the assumption of risk abolished by the statute.

At this point, unfortunately, the trial court injected into the case a somewhat foreign element. The conditions of the statute being satisfied and there being no contributory negligence on the part of appellant, as the jury found, liability followed absolutely, as it seems. The statute as construed leaves no fair room to doubt but that such circumstances as were found make a clear remediable wrong. To inject any other independent circumstance into such a case might well create confusion under any circumstances. To inject such foreign element into the case as in itself controlling might or might not, according to the finding, nullify the statute as regards the particular case.

The foreign circumstance referred to is indicated in this question: "If you answer question No. 6 'Yes' [that is, find

the failure to guard], then was it practicable to have securely
guarded such gearing so as to render it reasonably safe for
plaintiff to do his work without a ladder?" The intent of
the statute is that if an employer maintains a situation within
it, which as an ordinarily prudent man he ought reasonably
to apprehend may cause a personal injury to any of his em-
ployees in the discharge of his duty, he must hold himself
responsible for the consequences proximately produced
thereby to any such employee without his contributory negli-
gence. In that situation the rule of the statute is inexorable.
The charity of the law as to the employer has been exhausted.
There are only left its penalties from which there is no escape
under the law as it stands. It is no defense or excuse as re-
gards civil remedies that it is not practicable to guard against
the danger or to efficiently do so without some particular in-
strumentality, as in this case a ladder. If such particular
instrumentality is essential to an effective guarding or fenc-
ing, then failure to supply it, as here, is involved in and part
of the failure to securely guard or fence. We fully agree
with counsel for appellant that the statute prohibits a person
from using machinery under such conditions that, from the
standpoint of ordinary care, the situation will imperil the
personal safety of his employees in the discharge of their du-
ties in the exercise of ordinary care. It is no answer to a
case satisfying the statutory conditions that it was imprac-
ticable to comply with the statute. The police power, as the
statute has been construed, was not exceeded in passing it.
Therefore, the duty to comply therewith is absolute.

We are not unmindful the trial court may have been mis-
led by some expressions in opinions of this court. It is exceed-
ingly difficult to discuss at length the status of a given situa-
tion as regards legal liability, and avoid using any expression
which cannot be made to do service in producing error in any
other situation. Thus in *Lind v. Uniform S. & P. Co.* 140
Wis. 183, 120 N. W. 839, it was said, as if referring to a

vital matter under the statute, "there can be little doubt that
the open unguarded trap door created a situation of danger
for employees working around the opening, and it was a ques-
tion for the jury to determine on the evidence whether such
opening could be guarded without unreasonably interfering
with the work that was being carried on, and which could not
be performed with the doors closed." On the facts there
under consideration the quoted language was probably legiti-
mate. There was no thought, however, of holding, as to a
case within the statute—one where a reasonably prudent man
would or might reasonably apprehend injury to his employ-
ees or some one of them in the discharge of duty in the exer-
cise of ordinary care without the protection contemplated by
the statute—that unreasonable interference with operations
by providing such protection, is a defense for failure to
do so.

The same is true of an expression found in *Monaghan v.
Northwestern F. Co.* 140 Wis. 457, 122 N. W. 1066, imprac-
ticability of covering gearing without seriously impairing the
efficiency and use of the machine of which such gearing forms
part, being spoken of as entering into the subject of whether
there was negligent failure to guard or fence within the mean-
ing of the statute. Of course, a machine must be kept suffi-
ciently open so the work can practicably be done for which it
was designed. So the statute provides for fencing as an al-
ternative for guarding. It is not reasonably to be appre-
hended that an employee of ordinary intelligence and ex-
perience will allow his person to invade the necessarily open
places in a machine. Otherwise operations by machinery
would be practicably impossible. The question under dis-
cussion seems beside the case. If it were material in any
aspect the ladder feature was not, except in so far as a ladder
may be considered, under the circumstances, essential to ren-
dering the guard on the gear sufficient. Further, unless the
word "guarded" was intended to include the statutory duty

to guard or fence—either or both as the case might require—the question referred to but one feature of the statute.  Both the failure to guard and failure to fence were charged in the complaint.  This seems to have been overlooked.

Above all, if the question under discussion and answer, should have the meaning given thereto below, then the answer, it seems, should have been changed to "Yes."   As we see the machine by means of photographs, it was perfectly practical to have boxed the gear in the manner such boxing is ordinarily accomplished in many similar situations within common knowledge.   It is no answer to that, in view of the record, to insist the evidence shows the gear was boxed so far as customary respecting such machines; first, because there is no evidence that it is customary to locate such machines for operation and make no provision for reaching the parts to be oiled and examined from time to time without danger of coming in contact with the gears, as was the fact in this case; second, because it seems obvious that such exposed gears can be easily fenced so an employee can do his work about the machine in the exercise of ordinary care without danger of being perilously near thereto.

Following the last question treated the jury found that "such failure to guard and fence the gearing" was not the proximate cause of the injury to appellant.   There, it will be seen, the term "guard" as well as the term "fence" was used in the conjunctive, preceded by the word "such," while the antecedent found in the preceding question is "guard" and the court in the opinion on the motion after verdict and before judgment gave point to the idea that only failure to "guard" was involved.

It seems best to speak of these numerous errors and inadvertences as an indication of the care required to avoid such results as happened in this case.   It is not to be wondered at that the jury, after having reached the question under discussion, were perplexed as to their duty in respect thereto

and returned into court for some explanation. The practice at this point is not to be commended—calling the jury into court and allowing them to publicly declare the state of their deliberations, interrogating them openly as to what question they are considering and what questions have been answered and then changing instructions theretofore given to fit the situation.

The secrets of a jury room should not be disclosed in the public way indicated, if at all, till the final delivery into court. Till the end it is competent for the jury to change answers according to their convictions.

It is further not to be wondered at that the meaning of the verdict at last has to be read by the court out of some obscurity by construction, or that there has been difference of opinion up to this time whether it, was read rightly, and differences among the jurors leading them after they were discharged to interview the judge in respect to what they intended to find and to make conflicting affidavits in respect thereto.

It is considered that the question under discussion should have been answered in the affirmative, as a matter of course, following the answers finding all the conditions of culpable negligence. Looking at such found conditions, the instructions, and the undisputed evidence, there was no room for fair controversy but what failure to comply with the statute was the proximate cause of the injury.

If, as the trial court thought, the disturbing ladder feature, given such unnecessary prominence, was supposed by the jury to cut such figure that they could not find the failure to guard and fence the gear of itself, was the proximate cause of the injury, and so answered the question as they did, then such finding was, in effect, that failure to guard and fence, under the circumstances, was such proximate cause. That would be sufficient for this case in any aspect. So, as counsel for appellant viewed the question, the answer

should have been changed to one in his favor. As the trial court viewed the question, the negative answer should have been construed as a finding in appellant's favor. Lastly, eliminating the question entirely from the verdict, the parts remaining and the evidence show that respondent's breach of duty was the proximate cause of the accident. So in view of the finding in appellant's favor on the subject of contributory negligence it seems clear he was entitled to recover.

It follows that the judgment must be reversed as erroneous, but not, necessarily, that the case must go back for judgment in favor of appellant for the full amount claimed. This court is not bound by any arbitrary rule in respect to the status of the case upon reversal. It is free, under the wise policy of the Code, to send the case back for a new trial, if justice requires it, otherwise not. Justice is the dominating feature of the Code and it is the policy of this court to vitalize that feature upon every proper occasion. To that end cases are uniformly so disposed of as to terminate litigation wherever that can justly be done. The interests of both parties, if not their mutual desires, require it; the interest of the public demands it; the spirit of the Code commands it.

We are well satisfied that the verdict of the jury was excessive. The trial court would have been justified, without motion, in allowing judgment in appellant's favor only upon condition of his remitting a large part of the jury award. On motion to that effect it would have been plainly the court's duty to have required such remission. That could have been done then and can now be provided for, compelling respondent to submit to a stated amount at the option of appellant, without prejudicially interfering with the right of trial by jury, if such amount be placed as low as in any reasonable probability any future jury, rightly instructed as to the law and with proper conception of their duty, would be

liable to award. *Baxter v. C. & N. W. R. Co.* 104 Wis. 307, 80 N. W. 644; *Rueping v. C. & N. W. R. Co.* 116 Wis. 625, 93 N. W. 843.

The appellant was forty-five years of age. He was without any educational fitness for any vocation having never attended school but three weeks. He was a common laborer, had never been and had no reasonable prospect of ever being anything else. His monthly earnings, when he worked all the time, were possibly as high as $65. He lost the first and second and part of the third finger. He lost in wages up to the time he recommenced work after he was injured $150 to $160. After that he lost about a week's time upon the occasion of having the third finger amputated. Respondent paid substantially all his medical and surgical expenses. His working capacity, as to some kinds of labor, was somewhat impaired, he suffered the usual amount of pain in such cases, and his hand will not sustain the former amount of use. However, his earning capacity was not greatly diminished. He was taken back after the injury at a raise of wages, the disability not interfering with that kind of work. He worked in his old position quite a long time, then left of his own accord and thereafter did substantially full work cutting cordwood, making ties, and performing other labor. The hand, down to the trial, continued to trouble him somewhat.

We have endeavored to give a pretty full statement of all there is in the case on which to base an assessment of damages. It is easily seen that the elements measurable with any great degree of certainty are rather small. It is useless to try to name an equivalent for parts of the human body. That subject runs so deeply into the field of conjecture as to render losses caused by deprivation of such parts recoverable on the basis of what one would take as an equivalent, impracticable. The naming of a money equivalent for pain and some other matters proper to be considered also go into

the realms of obscurity that, in the ordinary affairs of life,. they would be regarded too uncertain to be recovered for,. yet they and any bodily disfigurement are regarded as compensable in this class of cases, the basis being the reasonable,. sound judgment of reasonable men applied to the evidence.

The expectation of appellant's life by the ordinary rules is about twenty-four years. His earning capacity, in the whole, for that time, appreciating that such a man rarely averages after the age of forty-five to work anywhere near full time for the rest of his life and at full wages, would not very greatly exceed the jury award. Forty-five hundred dollars is equal to a life annuity, purchasable in any standard insurance company, equal to more than two thirds appellant's. working capacity for the balance of his days.

Without carrying the logic of the situation further it must be apparent that $4,500 for appellant is beyond all reason and that a jury of sensible men properly instructed might place the recovery as low as half that sum. The proper amount of the recovery would probably be the only vital question on another trial. Doubtless the best interests of all parties would be best subserved by having the controversy closed on the basis indicated, and we will so dispose of the case as to render that possible at the option of appellant.

*By the Court.*—The judgment is reversed, and the cause remanded for a new trial, unless plaintiff elects within thirty days after filing the *remittitur* in the court below to take judgment for $2,250 and costs, which he may do, if he so elects, on motion therefor and on due notice in the trial court.

SIEBECKER and BARNES, JJ., took no part.

TIMLIN, J. (*concurring*). In this case there was a special verdict as follows: (1) Had the defendant, prior to plaintiff's said injury, provided a step-ladder for the oilers to use in connection with the pump in question? Answered,.

No. Questions (2), (3), and (4) not answered. (5) Was the gearing by which plaintiff was injured so located as to be dangerous to an oiler in the discharge of his duties while using ordinary care? Answered, Yes. (6) If you answer question number (5) "Yes," did defendant fail to have said gearing securely guarded or fenced at the time of the plaintiff's injury? Answered, Yes. (7) If you answer question number (6) "Yes," then was it practicable to have securely guarded said gearing so as to render it reasonably safe for plaintiff to perform his duties as oiler without a ladder? Answered, No. (8) If you answer the sixth and seventh questions "Yes," then was such failure to securely guard and fence said gearing the proximate cause of plaintiff's injury? Answered, No. (9) Did any want of ordinary care on plaintiff's part proximately contribute to produce his injury? Answered, No. (10) What sum of money would fairly compensate the plaintiff for the damages caused to him by his said injury? Answered, $4,500.

The circuit court, after denying the plaintiff's motion to change the answers to the seventh and eighth questions from "No" to "Yes" and for judgment, and the defendant's motion to change the answers to the first and ninth questions from "No" to "Yes," ordered as follows:

"It is further ordered that the motion of the defendant for judgment upon the verdict be and the same hereby is granted, and it is ordered that the clerk enter judgment herein upon the special verdict in this action, dismissing the plaintiff's complaint upon the merits and for costs in favor of defendant against the plaintiff."

The plaintiff appealed from a judgment entered pursuant to this order. The decision of this court, in which I concur, is that this judgment of the court below be reversed and that the plaintiff is entitled to judgment on the verdict above set forth. The requirement that plaintiff remit part of the damages found by the jury in order to entitle him to judg-

ment on the verdict rests alone on the conception that the damages found are excessive, and has no logical or legal relation to the questions of liability or those of statutory construction discussed. That part of the majority' decision which undertakes to change the answer to the seventh question of the special verdict because, as said, it appeared from the photograph in evidence it was practicable to have securely guarded the gearing, and that part changing the answer to the eighth question above set forth from "No" to "Yes" because it appeared conclusively from the evidence that the failure to securely guard the gearing was the proximate cause of plaintiff's injury, necessarily decide that the practicability of securely guarding a gearing may be conclusively inferred from inspection of such gearing or of an accurate picture thereof, and that the proximate cause (which, according to a long line of decisions of this court, cannot exist as a proximate or legal cause unless the party responsible for such cause in the exercise of ordinary care ought to have anticipated therefrom some injury to another) may be inferred from the facts that the gearing was so situated as to be dangerous to employees in the discharge of their duties and was not securely guarded. With these two changes the verdict of the jury as above set forth may be restated as it is corrected and established by this court:

The defendant failed to provide a step-ladder for the oilers to use. The gearing by which plaintiff was injured was so located as to be dangerous to an oiler in the discharge of his duties while using ordinary care. The defendant failed to have the said gearing securely guarded or fenced. It was practicable to have securely guarded the gearing so as to render it reasonably safe for plaintiff to perform his duties. The failure to securely guard the gearing was the proximate cause of plaintiff's injury. There was no contributory negligence.

The verdict having been allowed to stand establishing the foregoing facts, the introduction of detailed evidential facts

only produces confusion. On these facts only, judgment is given for the plaintiff. The failure to provide a step-ladder may be eliminated as irrelevant. There is no finding that the defendant was negligent. The sole basis of the judgment for plaintiff is that the gearing was so situated as to bring it within the terms of the statute (sec. 1636*j*, Stats. 1898); that although it was practicable to do so the defendant failed to securely guard it; that the plaintiff was injured in consequence of such failure to securely guard such gearing so situated. I agree that this is the law. It is in harmony with *Klatt v. N. C. Foster L. Co.* 97 Wis. 641, 73 N. W. 563; *Smith v. Milwaukee B. & T. Exch.* 91 Wis. 360, 64 N. W. 1041, 30 L. R. A. 504, 51 Am. St. Rep. 912; *Sharon v. Winnebago F. Mfg. Co.* 141 Wis. 185, 124 N. W. 299; *Stafford v. Chippewa Valley E. R. Co.* 110 Wis. 331, 85 N. W. 1036; *Van de Bogart v. Marinette & M. P. Co.* 132 Wis. 367, 112 N. W. 443; *Walker v. Simmons Mfg. Co.* 131 Wis. 542, 111 N. W. 694; *Anderson v. Horlick's M. M. Co.* 137 Wis. 569, 119 N. W. 342; *Reffke v. Patten P. Co.* 136 Wis. 535, 117 N. W. 1004; *Hoffman v. Rib Lake L. Co.* 136 Wis. 388, 117 N. W. 789. There appears to exist in this court, observable in the majority opinion in this case as well as in many other opinions, a belief that the majority of the court by force of numbers and by mere proclamation can alter the *ratio decidendi* of a decision by declaring that it means something which aside from the proclamation it would not mean. I do not so understand the common law.

It is quite unnecessary to reiterate a dissent. I should not do so here but for the fact that the majority opinion goes out of its way to bring in *West v. Bayfield M. Co.* 144 Wis. 106, 128 N. W. 992, as a sort of harbinger of this case, and laboriously and lamely attempts to vindicate that decision as controlling this case notwithstanding my dissent in the *West Case* and my concurrence in this case. The real point decided in the *West Case* was that the jury was misinstructed

because the trial judge said: "By securely guarding it is meant that the defendant should guard the gearing safely that the persons who work about the gearing should be secure against danger or violence while performing their work." I thought then and still think that these words, while inaccurate and imperfect as a definition, were substantial language equivalents for what Justice Marshall, speaking for the court, said in *Anderson v. Horlick's M. M. Co.* 137 Wis. 569, 119 N. W. 342, and were substantially in accord with other cases mentioned. For the use of these words alone was the judgment in the *West Case* reversed, and it might be profitable to compare the instruction condemned in the *West Case* as erroneous or misleading with that mildly criticised but not considered so erroneous as to prevent a judgment by this court for the plaintiff in the instant case. The charge here was: "A gearing is securely guarded or fenced when it is so guarded or fenced that it would not be dangerous to any employee required to work in its vicinity if such employee uses ordinary care for his own safety." The difference appears to be between the words "should be secure against danger or violence while performing their work," and "would not be dangerous to any employee required to work in its vicinity." But in writing the majority opinion in the *West Case* the court went beyond what was necessary to the decision and resurrected the old case of *Guinard v. Knapp-Stout & Co. Co.* 95 Wis. 482, 70 N. W. 671, disregarding, and as I think overruling, a number of later decisions, and proclaimed law which I considered for reasons there stated erroneous and even absurd. If, as stated in the *West Case,* the employer is not bound to conform to the statute, sec. 1636*j,* but only to exercise ordinary care so to do, and especially if it be considered that this exercise of ordinary care may be established by proof of what other employers do in respect to covering gearings, then the verdict in this case would not warrant a judgment for plaintiff because it contains no find-

ing that the employer was negligent or failed to exercise ordinary care. Where there is no finding of negligence therein the verdict is defective unless the court can say as matter of law that negligence has been shown. *Orttel v. C., M. & St. P. R. Co.* 89 Wis. 127, 61 N. W. 289, cited with approval in *Morrison v. Madison,* 96 Wis. 452, 71 N. W. 882; *Beaton v. Milwaukee,* 97 Wis. 416, 73 N. W. 53; *La Fave v. Superior,* 104 Wis. 454, 80 N. W. 742; *Hildman v. Phillips,* 106 Wis. 611, 82 N. W. 566; *Strasser v. Goldberg,* 120 Wis. 621, 98 N. W. 554. In the instant case the judgment was for the defendant. In the absence of finding of negligence by the jury the effect of this judgment was to determine that there was no negligence. *Lehman v. C., St. P., M. & O. R. Co.* 140 Wis. 497, 122 N. W. 1059, citing sec. 2858m, Stats. (Laws of 1907, ch. 346); *Bates v. C., M. & St. P. R. Co.* 140 Wis. 235, 122 N. W. 745; *Bratz v. Stark,* 138 Wis. 599, 120 N. W. 396. There are other and later cases to this effect. . Notwithstanding this condition of the record and on this verdict failing to find negligence, the judgment in the instant case is reversed and judgment ordered for the plaintiff. To my mind this is because, notwithstanding protestations to the contrary, the court has here again decided that the infraction of the statute, sec. 1636j, found by the verdict constitutes negligence *per se.* So the real decision in this case in which I concur is contrary to the case of *West v. Bayfield M. Co., supra.* There is no finding in this case that can be said to cover the question of defendant's negligence or of the item of anticipation in the question of proximate cause, and yet judgment is ordered for the plaintiff. There is nothing either in the verdict or in the evidence from which the inference of negligence can be drawn, except that the gearing was so situated as to be dangerous to employees in the discharge of their duty and that it was not securely guarded. I am quite aware that if one roil up the legal waters sufficiently he may draw therefrom whatever fish he

pleases, provided always he has the sole right to name the fish; and so I can understand that the majority by mere force of numbers and dogmatic assertion may declare this conclusion that the defendant was negligent a conclusion of fact. But that does not make it so. This is merely calling it by a selected name without reference to its real nature for the purpose of justifying the arbitrary conclusion that the result will be rebuttable by proof that this employer did as other employers do. In the *Klatt Case* this court declared that the failure to perform the statutory duty was negligence *per se.* Here, that the same failure is negligence in fact, which if not rebutted entitles the plaintiff to a judgment. It may be said there is not much difference. The regrettable thing is the confusion thus brought into the law. In the *West Case* it was declared (*obiter*) that it was sufficient to defeat or rebut this liability to show that other employers did not cover like gearings. This I think I have shown to be erroneous, if for no other reason than that it permits the class regulated by the statute, by acting together, to nullify the statute. This is attempted to be promulgated (*obiter*) in the instant case. But in the instant case this has also been coupled with the inconsistent declarations, (a), (b), (c), and (d), *infra,* which show that other more logical grounds ordinarily used to rebut negligence are not available against this so-called negligence in fact. I do not consider the fact that sec. 1636*jj,* Stats. (Laws of 1905, ch. 303), speaks of negligent omission to guard or fence at all significant or material. The presumption is that the lawmakers meant negligence *per se,* gathering their wisdom from the *Klatt Case* and subsequent confirmatory decisions. This reference to sec. 1636*jj* seems to me like grasping at straws. I cannot reconcile the statement that the fact of a gearing so located as to be dangerous to employees in the discharge of their duty, together with the fact that this gearing remained uncovered, established negligence of the employer as a conclusion of fact,

with the disposition made of this case or with the following quotations from the majority opinion:

(a) "The conditions of the statute being satisfied and there being no contributory negligence on the part of appellant, as the jury found, liability followed absolutely, as it seems. The statute as construed leaves no fair room to doubt but that such circumstances as were found make a clear remediable wrong. To inject any other independent circumstance into such a case might well create confusion under any circumstances."

(b) "The intent of the statute is that if an employer maintains a situation within it, which as an ordinarily prudent man he ought reasonably to apprehend may cause a personal injury to any of his employees in the discharge of his duty, he must hold himself responsible for the consequences proximately produced thereby to any such employee without his contributory negligence. In that situation the rule of the statute is inexorable. The charity of the law as to the employer has been exhausted. There are only left its penalties, from which there is no escape under the law as it stands. It is no defense or excuse as regards civil remedies that it is not practicable to guard against the danger, or to efficiently do so without some particular instrumentality, as in this case a ladder. If such particular instrumentality is essential to an effective guarding or fencing, then failure to supply it as here, is involved in and part of the failure to securely guard or fence."

(c) "We fully agree with counsel for appellant that the statute prohibits a person from using machinery under such conditions that, from the standpoint of ordinary care, the situation will imperil the personal safety of his employees in the discharge of their duties in the exercise of ordinary care. It is no answer to a case satisfying the statutory conditions that it was impracticable to comply with the statute. The police power, as the statute has been construed, was not exceeded in passing it. Therefore, the duty to comply therewith is absolute."

(d) "There was no thought, however, of holding, as to a case within the statute—one where a reasonably prudent man would or might reasonably apprehend injury to his em-

ployees or some one of them in the discharge of duty in the exercise of ordinary care without the protection contemplated by the statute—that unreasonable interference with operations by providing such protection, is a defense for failure to do so."

Each and every of the foregoing (a), (b), (c), and (d) is to my mind inconsistent with the broad statements contained in the majority opinion in the *West Case* and inconsistent with the quotation from that opinion approved in the majority opinion in the instant case. I am unable to detect any substantial difference between a duty to exercise ordinary care and "an absolute duty to exercise ordinary care." There is no doubt an important distinction between a rule which requires one to do or omit to do a designated act and a rule which merely requires one to exercise ordinary care. The common law presented instances of each rule. As the case of cattle straying from the premises of the owner and cattle escaping from custody while being lawfully driven on the highway. *Metropolitan C. Ins. Co. v. Clark, ante,* p. 181, 129 N. W. 1065. An innkeeper, like a carrier, was liable for all goods of his guest lost in the inn unless the loss happened by act of God or by that of a public enemy or by negligence of the owner of the goods. 22 Cyc. 1081 and cases. But in respect to the guest himself the duty of the innkeeper was only to exercise ordinary care for his safety. Id. 1080. Obligations or duties to another may be imposed by contract, by common-law rule, or by statute. Contract obligations or duties requiring specific things to be done or omitted can never be discharged by merely showing that the defendant exercised ordinary care but nevertheless failed. 9 Cyc. 625 *et seq.* The same is true as regards common-law duties or obligations which require some specific thing to be done or omitted. And the same rule applies to statutory duties or obligations. *Monteith v. Kokomo W. E. Co.* 159 Ind. 149, 64 N. E. 610, 58 L. R. A. 944; *Deserant v. Cerillos C.*

*R. Co.* 178 U. S. 409, 20 Sup. Ct. 967; *Hayes v. Mich. Cent. R. Co.* 111 U. S. 228, 4 Sup. Ct. 369, and cases in Rose's Notes to this case, vol. 10, p. 799, and vol. 2, Supp. p. 637; *Smith v. Milwaukee B. & T. Exch.* 91 Wis. 360, 64 N. W. 1041; *Sharon v. Winnebago F. Mfg. Co.* 141 Wis. 185, 124 N. W. 299, and other Wisconsin cases *supra; Klatt v. N. C. Foster L. Co.* 97 Wis. 641, 73 N. W. 563. The common expression is, in an action charging negligence, that the failure to perform a statutory duty owing to another, in consequence of which failure the latter is injured, is negligence *per se*. But these words are merely expressive of a broader and more general rule of law that where an obligation or duty is due from A to B and the latter is injured in consequence of a breach of that duty and without his fault, a cause of action results. In *Stork v. Charles Stolper C. Co.* 127 Wis. 318, 106 N. W. 841, the rule is stated as follows:

"It should be remembered that the injury resulted directly from contact with an uncovered gearing, the presence of which was not only unlawful under sec. 1636*j*, Stats. (1898), and therefore negligent, but might also have been considered negligence on the part of the defendant independently of such statute."

"Negligence may consist in a failure to conform to a specific rule of law or in a failure to act as a man of ordinary prudence would act under the same circumstances. When the act or omission violates a specific rule of law, it is negligence as matter of law." 2 Cooley, Torts (3d ed.) 1433. Neglect of statutory duties. Id. 1404, 1408.

From these authorities I think it is apparent that where the duty is specific, as in the statute in question, and one to whom the duty is due is injured by a breach thereof without fault on his part, a right of recovery is shown. The statute in question is neither doubtful nor obscure, except as it has been made so by decisions of this court, where, according to the opinion of the majority, "almost every available phase of the subject has been judicially treated and some of them

over and over again, yet the record here shows that there has been some misunderstanding." To my mind it is not at all wonderful considering the decisions above cited, and the present majority opinion will no doubt add to this misunderstanding. This is not an unfamiliar complaint in this court. *Patnode v. Westenhaver,* 114 Wis. 460, 90 N. W. 467. The remedy we should apply to ourselves. The statute in question shows that it was passed for the protection of employees engaged in working about or in proximity to belting, shafting, gearing, hoists, fly-wheels, elevators, or drums. Whenever these are so located as to be dangerous to employees in the discharge of their duty they shall be securely guarded or fenced. This imposes an absolute duty but not an absolute liability on the employer. The liability is not absolute or in the nature of insurance, for in order to recover the plaintiff must show that he is within the class intended to be protected, that the gearing, etc., was so located as to be dangerous to him in the discharge of his duty, and that the failure to securely guard or fence was the legal or proximate cause of the injury; and even after all this is established the employer may still escape liability by showing that want of ordinary care on the part of the employee also contributed proximately to cause his injuries. In other words, if both are at fault the whole loss falls on the employee. The question whether or not the gearing was so located as to be dangerous is a question of fact which permits a wide scope of inquiry, and so also is the question whether or not the failure to securely guard was the proximate cause of the injuries. Under the rule of law apparently settled in this state, that it is an essential element of proximate cause that the party sought to be charged ought in the exercise of ordinary care to have anticipated injury arising from such cause, this latter inquiry could be made in the investigation of proximate cause in a case properly raising a doubt on this point. But that question is not here and was not in the *West Case.* I prefer to

pass on this when it is properly presented for decision. When I proceed to examine the claim apparently put forward in the majority opinion, that prior to the decision in the *West Case* the statute had received a similar construction, I am at a loss to understand that opinion. The case of *Klatt v. N. C. Foster L. Co.* 97 Wis. 641, 73 N. W. 563, is introduced with the statement: "It seems the court at first was inclined to hold that a violation of the statute establishes negligence creating liability defendable against only by contributory negligence in the ordinary sense." So it only "seems" and that only "at first," and then the court did not hold but was only "inclined to hold." "Seems, madam," says Hamlet to his mother, "Nay, it is." This was not "at first," for *Klatt v. N. C. Foster L. Co.* is reported in 97 Wis. 641, while *Guinard v. Knapp-Stout & Co. Co.*, which in disregard of later cases became the guide in *West v. Bayfield M. Co.*, is reported in 95 Wis. 482. Surely this court was something more than merely "inclined to hold" that a violation of the statute establishes negligence when it used and approved the following language:

"Absence of the guard was negligence *per se*. A failure to perform the duty so imposed constituted actionable negligence at the suit of the person of that class injured by the failure of duty without contributory negligence on his part."

But it is said: "It may be that all who concurred in *Klatt v. N. C. Foster L. Co., supra,* did not intend to hold that mere failure to comply with the statute was sufficient to create an inference of culpable negligence as matter of law." We have no way of judging what they intended to hold except from the language used and approved as applied to the questions before the court, and there is nothing in that language to throw doubt upon their intention. Following the statement that it may be that all who concurred in *Klatt v. N. C. Foster L. Co.* did not intend, etc., there is a reference to and some discussion of *Burns v. C., M. & St. P. R. Co.*

104 Wis. 646, 80 N. W. 927, which I do not understand.
That was a horse case as it now appears in print and not a
master and servant case. *Helmke v. Thilmany,* 107 Wis.
216, 83 N. W. 360; *Thompson v. Edward P. Allis Co.* 89
Wis. 523, 62 N. W. 527; *Kreider v. Wis. River P. & P. Co.*
110 Wis. 645, 86 N. W. 662; *Upthegrove v. Jones & Adams*
*C. Co.* 118 Wis. 673, 96 N. W. 385; and *Walker v. Simmons*
*Mfg. Co.* 131 Wis. 542, 111 N. W. 694, are then discussed.
But these cases are relevant only as to whether the defense of
assumption of risk or that of contributory negligence is avail-
able and seem utterly foreign to the questions here under con-
sideration.    The majority opinion then abruptly takes the
final plunge and sets up the standard of *Guinard v. Knapp-*
*Stout & Co. Co.* 95 Wis. 482, 70 N. W. 671, against *Klatt v.*
*N. C. Foster L. Co.* 97 Wis. 641, 73 N. W. 563, not to men-
tion the later cases affirmatory of *Klatt v. N. C. Foster L.*
*Co.* which I have cited above, and makes the earlier case in
effect overrule the later case, always of course with the aid
of *West v. Bayfield M. Co., supra.* If anything were neces-
sary to demonstrate that the *West Case* was a reactionary de-
cision, disregarding the later decisions of this court and go-
ing back to the old and discredited doctrine of the *Guinard*
*Case,* this majority opinion in the instant case does so.    Here
again I am unable to understand how judges who consider the
old law archaic and are filled with human sympathy for the
victims of industrial accidents and welcome legislative re-
lief (*Driscoll v. Allis-Chalmers Co.* 144 Wis. 451, 467, 129
N. W. 401, 408, separate opinion of Winslow, C. J., and
Barnes, J.; and *Houg v. Girard L. Co.* 144 Wis. 337, 352,
129 N. W. 633, 639, separate opinion by Marshall, J.)
could take this extraordinary and reactionary course of disre-
garding late numerous and established decisions in line with
the law elsewhere and with the common law and resurrect
an old case which had been in effect discredited in this state
and by the consensus of authority elsewhere and endeavor to

resuscitate it so as to control the construction of this statute in a way to nullify the statute at the option of employers. Beyond doubt this is honest but nevertheless deplorable inconsistency.   I cannot let this pass without protest, however unavailing that protest may be, and I feel convinced that time will justify this separate opinion.

Mr. Justice KERWIN, I am authorized to say, concurs in this opinion.