Webster, by guardian *ad litem,* Respondent, vs. Corcoran Brothers Company, imp., Appellant.

*March 18—April 9, 1914.*

*Negligence: Injury to child: Duty to protect from danger.*

1. If a person lawfully conducts operations in a place and manner liable to imperil the safety of children of tender years rightfully in the vicinity, and such children are or may be reasonably expected to be lawfully there, he owes to them the duty of exercising ordinary care to protect them from such peril.

2. Defendant's servants, by means of a rope and tackle operated by horses, were raising sacks of oats from a wagon standing in an alleyway to the third story of a barn. Plaintiff, about eight years old, and other boys had been playing with the rope and had been ordered away, but remained near by. A kink having formed in the rope, plaintiff was told by the driver of the horses to straighten it out. As he took hold of the rope near a pulley, the driver negligently started the horses and plaintiff's hand was drawn into the pulley and injured. The jury found that defendant's servants did not exercise ordinary care to prevent plaintiff from incurring danger from handling the rope. *Held*, that the defendant was liable for the injury.

APPEAL from a judgment of the circuit court for Milwaukee county: J. C. LUDWIG, Circuit Judge. *Affirmed.*

Action for a personal injury.

The evidence, which was competent and material under the proceedings, established, or tended to establish, this: Into a public alleyway on which a barn abutted, on the 11th day of August, 1911, defendant's servants drove a team of horses drawing a wagon loaded with sacks of oats. The purpose was to unload the grain into the barn. The wagon was located alongside the building and operations commenced by means of a block and tackle. The appliance was so attached and operated by horses as to raise the sacks of grain from the wagon to a door in the third story of the barn. The rope ran through a pulley near the ground. As the horses moved away from such pulley the rope was near enough to the ground to be within easy reach of young-children and liable to endanger their safety if they meddled with it. Plaintiff and other children did that and were ordered away. They remained near by till a kink formed in the rope which needed to be straightened out before the work could go on. Thereupon, the driver, instead of dropping his lines and restoring the rope to a working condition, requested plaintiff to do it. The man on the wagon, who had general charge of the work, interfered and ordered the boy away. The teamster persisted a while and then repeated his request to the boy and

in the manner of an order.  The man on the wagon said nothing further.  The boy now proceeded as he was told by the teamster without further objection from the man on the wagon.  As the boy took hold of the rope near the pulley, the teamster, negligently, caused the horses to suddenly start whereby the former's hand was drawn into the pulley and injured.

The jury found plaintiff to have been injured as indicated; that defendant's servants did not know, but ought to have known, that plaintiff had hold of the rope when the horses started; that such servants did not exercise ordinary care to prevent plaintiff from incurring danger from handling the rope; that such fact was the proximate cause of the injury; that plaintiff neither knew, nor could reasonably have been expected to know, that his hand was likely to be caught when the horses commenced to move, and was not guilty of want of ordinary care proximately contributing to his injury; and that he was damaged to the amount of $3,000.  Judgment was rendered for plaintiff accordingly.

For the appellant there was a brief by *Quarles, Spence & Quarles,* attorneys, and *I. A. Fish,* of counsel, and oral argument by *Mr. Fish.*

For the respondent there was a brief signed by *Cary, Upham & Black,* attorneys, and *C. W. Reeder,* of counsel, and oral argument by *Mr. Reeder.*

MARSHALL, J.    Counsel for appellant present several matters for consideration which seem beside the case.  A recovery was neither sought nor obtained upon the ground that the relation of master and servant existed between plaintiff and defendant when the former was injured.    The law in respect to liability to a volunteer has no application, nor has liability of a master for the consequences of an act of his servant outside the scope of his employment, as by engaging some one to help him without authority, express or implied, to do so.

The question presented does not seem to involve serious difficulties. It was competent for appellant to unload its grain where it did. It was charged with knowledge that young children,—too young, without efficient warning and considerable oversight, to be free from peril of personal injury in case of being allowed to be near the rope,—were liable to be rightfully in the vicinity. In such circumstances it owed such children the duty of ordinary care to keep them without the zone of danger. In that respect, as claimed by counsel for respondent, the situation was quite similar to *Kelly v. Southern Wis. R. Co.* 152 Wis. 328, 140 N. W. 60, and *Secard v. Rhinelander L. Co.* 147 Wis. 614, 133 N. W. 45.

While it was not within the scope of the teamster's employment to invite or direct the boy to assist in handling the rope, it was within such scope and that of the man on the wagon, who was directing operations, to reasonably guard the rope from interference by children. If they failed in that respect, and in consequence the child received the injury, the principle of the *Kelly Case* fits the facts perfectly.

The principle involved may be concisely stated thus: If a person lawfully conducts operations in a place and manner liable to imperil the safety of children of tender years, rightfully in the vicinity, and such children are or may be reasonably expected to be lawfully there, he owes to them the duty of exercising ordinary care to protect them from such peril. That is true, as said in the *Kelly Case,* even in the event of the situation being such that a child could not be in peril without becoming a trespasser, if such an occurrence might reasonably be expected, under the circumstances, in the absence of exercise of ordinary care on the part of those conducting the work to prevent it. The duty to exercise such care, in such situations, is important. It is due to the innocents who are liable to be injured in case of such duty being neglected, and it is due to the public as well.

As said in the *Kelly Case:* "Conservation of child life and safety, as to artificial perils, is one of such importance that ordinary care may well hold every one responsible for creating and maintaining a condition involving any such with reasonable ground for apprehending that children of tender years may probably be allured thereinto."

Why does not the foregoing apply to the facts of this case? According to the verdict, defendant was responsible for a condition which was naturally calculated to, and in fact did, allure children of tender years to become so involved in it as to imperil their safety. The creation of the condition gave rise to the duty to exercise ordinary care for the safety of any such children. Not only was there failure to use such care, as in the *Kelly Case,* but there was an invitation to plaintiff to meddle with the rope,—breach of duty by commission as well as omission. The chief circumstance upon which defendant relied to defeat the plaintiff's claim there, that is, that the child was a trespasser in touching the rope, did not exist here. On the contrary there was an invitation to do the very thing which duty required ordinary care to prevent.

*By the Court.*—The judgment is affirmed.