KRESSINE, by guardian *ad litem*, Respondent, vs. JANES-
VILLE TRACTION COMPANY, Appellant.

*September 22—October 18, 1921.*

*Negligence: Objects alluring to children: Standing street car: Pre-
cautions to prevent injury to children: Reasonable anticipa-
tion of childish conduct.*

1. One may not maintain in a public street an implement, machine,
   or structure attractive to children without taking due care to
   prevent injury resulting to them by reason of natural childish
   interference therewith.
2. A street railway company which left a street car standing on
   its track in a public street is chargeable with knowledge that
   it is an alluring object to children, and is therefore required
   to render it innocuous to probable childish incursion.
3. The railway company having tied the trolley pole to the top of
   the standing car, turned the switches at both ends of the car,
   set the brakes, removed the controller, and locked the doors,
   as a matter of law took proper precaution to prevent chil-
   dren from moving the car and thus injuring themselves.
4. The railway company was charged with knowledge of the ordi-
   nary conduct of children and was bound to anticipate conse-
   quences arising from such conduct; but it was not bound to
   anticipate the extraordinary conduct or precocious ingenuity
   of a group of boys in crawling on top of the car, placing the
   trolley pole in contact with the wire, and then picking up an
   insulator, never used for the purpose, and making it serve
   as a controller to start the car.

APPEAL from a judgment of the circuit court for Rock
county: GEORGE GRIMM, Circuit Judge. *Reversed.*

This is an action to recover damages for personal injuries
sustained by plaintiff on June 13, 1919, a boy then about
three years of age. The evidence shows that on or before
June 13, 1919, a repair crew in the employ of defendant
had been habitually conveyed to the then terminus of the
Jackson-street line in the city of Janesville in an old street
car. The workmen were let out of the car at the scene of
their work, and the foreman then took the car to the end
of the line on South Jackson street, which was the only place
the car could be left without interfering with regular city

Kressine v. Janesville Traction Co. 175 Wis. 192.

service. The testimony shows that the foreman upon leaving the car habitually pulled the trolley pole down away from the trolley wire and tied it down to the top of the street car, it being necessary for him to climb to the top of the street car to do so. He then threw out the overhead switch, which is a cut-out or switch located on the ceiling of the street car, and as high as a man can reach, which broke the connection so that the car could not be started unless the switch was put in again. He also set the brake on the car, removed both of the controller levers, the forward and reverse controls of the car, and took them away with him to the place where the repair gang was working, so that nothing but the square projections on which they fit was left. Finally he closed both of the doors of the street car. These doors had no locks, but did have a catch or lever on the inside, so that when shut it was necessary to get in through a window in order to open them again. It appeared, however, that one of the doors of the car stuck at times and that it was not always possible to get it entirely shut.

Children were in the habit of congregating in the street in the vicinity of this work car. They frequently got into the car through the windows or doors, in some manner not clearly appearing, and frequently played in and about the car. The employees of the defendant company knew of this fact and frequently chased them away. On one or two occasions prior to the day of the accident the children did put up the trolley pole, threw in the overhead switch, and by some means not described had managed to start the work car. One witness testified that on one occasion they operated it in that manner a distance of about half a block and back again. It does not appear that any employee of the defendant knew that the work car was ever moved by the boys or that they had ever touched the trolley pole or overhead switch; neither is there any evidence that the boys ever left the trolley pole up, or the overhead switch turned on, when they departed on any occasion previous to the accident.

On the day of the accident the witness Charles Knoff, a

motorman employed by the defendant and in charge of a car in city service on the South Jackson street line, ran his car to the temporary terminus of the line on South Jackson street at the scene of the accident, and stopped his car at about six or eight feet north of the work car. He turned the trolley pole around ready for the return trip and went back into the car, proceeding to the front end where he was preparing to start. While so engaged, and with his car standing still, the plaintiff and his companions who were playing in the work car at the time started it up. The plaintiff was on the front end of the work car. The work car traveled the six or eight feet intervening between the two cars without attracting the attention of the motorman on the street car, and bumped into the regular car, pushing it along. The plaintiff boy was caught between the two cars and sustained the injuries to recover damages for which this action was brought. It was necessary for the motorman on the service car to enter the work car to stop it. He found that the boys had picked up an instrument, called an insulator, which resembles very much the handle of a dumb-bell, upon the end of which is a staple-shaped opening. The boys had pressed this opening down over the controller shaft so as to enable them to start the car. This insulator had never been used for such a purpose to the knowledge of any one who testified in the case, nor had any of the witnesses ever considered it as capable of such use.

The evidence showed that one of the boys, a brother of the plaintiff, had climbed on top of the street car and released the trolley pole from its fastenings and placed it in contact with the trolley wire. There was also testimony to the effect that on several occasions when the city service cars came to the end of the line on South Jackson street previous to the accident, motormen had permitted boys to help them turn the trolley pole around and that at times conductors or motormen had given the boys a penny on such occasions.

At the close of the evidence the defendant moved the

court to direct a verdict in its favor, which motion was denied. A special verdict was returned by the jury in which it was found that the defendant was guilty of a want of ordinary care in leaving the car under the circumstances in the condition it was left on the day of the injury, which want of ordinary care was the proximate cause of the injury; that the plaintiff was not guilty of a want of ordinary care which proximately contributed to produce the injury, and that the plaintiff was not of sufficient age and discretion to care for his own safety and render it prudent to go about alone. Damages were assessed at the sum of $1,383.33. The defendant thereupon moved the court to change the answer to the first question of the special verdict from Yes to No and for judgment on the verdict as amended; for judgment upon the verdict as rendered; for judgment notwithstanding the verdict; and to set aside the verdict and for judgment for defendant. All of said motions were denied and judgment was rendered for the plaintiff. The defendant appealed from such judgment.

For the appellant there was a brief by *Nolan, Dougherty & Grubb* of Janesville, and oral argument by *W. H. Dougherty*.

For the respondent there was a brief by *Kading & Kading* of Watertown; and oral argument by *C. A. Kading*.

Owen, J. In recognition of the fact that children will play in a public street, this court has held that one may not maintain therein an implement, machine, or structure attractive to children without taking due care to prevent injury resulting to them by reason of natural childish interferences therewith. *Busse v. Rogers,* 120 Wis. 443, 98 N. W. 219; *Harris v. Eastern Wis. R. & L. Co.* 152 Wis. 627, 140 N. W. 288; *Kelly v. Southern Wis. R. Co.* 152 Wis. 328, 140 N. W. 60; *Webster v. Corcoran Brothers Co.* 156 Wis. 576, 146 N. W. 815. The duty thus cast upon him who places or maintains such an implement, machine, or structure in

the street is founded upon considerations of humanity rather than any legal relations existing between him who maintains the dangerous apparatus and the children who may come in contact therewith. It follows naturally from a recognition of the fact that children of tender age have not acquired an appreciation of the impropriety of meddling with other people's property nor the dangers lurking in the complicated machine. The all-wise Providence has implanted in the child a curiosity which can be satisfied only by feeling and handling new and strange objects. This is a trait which frequently tries the patience of adults, but it is an instinct ordained by nature and cannot be changed by man.

In fixing a standard of human conduct involving the safety of children this trait cannot be ignored. Children are all about us wherever we go and whatever we do, especially if it be in the public street. That their presence in the public street is not only an aggravation to adults but dangerous to their safety, all will concede. But that they will be in the public streets at inopportune times and places is a fact that cannot be ignored. From these considerations this court has laid down the rule that "conservation of child life and safety, as to artificial perils, is one of such importance that ordinary care may well hold every one responsible for creating and maintaining a condition involving any such with reasonable ground for apprehending that children of tender years may probably be allured thereinto." *Webster v. Corcoran Brothers Co.* 156 Wis. 576, 146 N. W. 815; *Kelly v. Southern Wis. R. Co.* 152 Wis. 328, 140 N. W. 60.

The defendant had a lawful right to leave the street car here in question standing on the track in the street as it did. It was unquestionably chargeable with knowledge of the fact that children were continuously playing in the street, around and about the street car, and that the car was a most alluring object to the children of that neighborhood. This laid upon the defendant a duty to render its presence harmless to the ordinary childish interferences therewith in the

nature of original research and investigation. The jury found that the defendant company failed in its duty in this respect. This finding is challenged as being contrary to the evidence, and we are to determine whether the conduct of the defendant fulfilled its obligations in this respect as a matter of law.

That the probability of childish interference with the car was appreciated and a *bona fide* effort made to render it innocuous to probable childish incursion is manifest. The employees who had charge of the car testified that the following things were done to render it inanimate and irresponsive to any childish intermeddling therewith: first, the trolley pole was tied down to the top of the car; second, the switch at either end of the car was turned, thus breaking for a second time the electric current; third, the brakes were set; fourth, the controller, a crank-shaped device which regulates the flow of electric current when in the hands of the motorman, was taken away; and fifth, the doors were locked. That they did all these things there is no direct testimony to dispute. But it is contended that the testimony in this behalf was either so shaken upon cross-examination, or made improbable by other circumstances in the case, that the jury had a right to disbelieve that the doors were locked or that the switch at the end of the car had been turned. Granting this contention, it remains conceded by every witness in the case that the trolley pole was tied down to the top of the car and there is no reason whatever to doubt that the controller was taken away. It is a verity in the case, then, that the trolley pole was disconnected from the electric over-head wire and securely tied down to the top of the car and the controller taken away. Without contact by the trolley pole with the electric over-head wire the street car was an inert object. The controller was generally regarded as an indispensable instrument for the setting of the car in motion.

With these facts in mind, the question is whether, in tieing down the trolley pole and removing the controller, the

company was in the exercise of due care for the safety of children who might be playing thereabouts. The care required under such circumstances is reasonable care. It is the care that men of ordinary prudence would exercise under the same or similar circumstances. The dangers which it was the duty of the company to guard against were such as reasonably might have been anticipated. It was not an insurer of the safety of the children. It was not the duty of the company, as we view it, to so dismantle or disempower the car as to render it harmless under every conceivable circumstance. It was charged with knowledge of ordinary childish conduct, and it was bound to anticipate consequences resulting from such conduct. It was not bound to anticipate consequences resulting from the unusual or extraordinary conduct or the precocious ingenuity displayed by this particular crowd of boys.

In considering a similar situation the Minnesota court said:

"We do not mean to intimate, in respect to the matter of fastenings in a case like this, that they must be such as to render it impossible for children to remove them, nor that the fact that in the particular case they were removed by such children necessarily makes a case of negligence. But they ought to be such (we are speaking of cases where very young children, to the knowledge of the defendant, have ready access to, and may be attracted by, turntables and car-wheels standing on the tracks) that an ordinarily prudent person would deem them sufficient to render it improbable that children, within the rule, would remove them." *O'Malley v. St. P., M. & M. R. Co.* 43 Minn. 289, 45 N. W. 440.

We think this language quite clearly and correctly states the degree of care required under the circumstances here, and it seems to us that the conduct of the defendant responded fully to that standard. In the first place, it should hardly be required to anticipate that boys of eight or nine years of age would crawl on top of the street car and untie the trolley pole so that it might be placed in contact with the

electric wire; but even should it be held to such an anticipation, certainly it could not be held to anticipate that these boys would seize upon an implement never used for that purpose and make it serve as a controller. To hold the defendant responsible for the plaintiff's damage is to require it to be an insurer of the safety of children in and about its cars under all circumstances, and would well-nigh lay upon it the duty of placing a guard at a car when left standing on a street. We do not think the defendant's negligence was a jury question. Its conduct responded to the degree of care required by it under the circumstances. It follows that the judgment should be reversed, and the cause remanded with instructions to dismiss plaintiff's complaint.

*By the Court.*—So ordered.