PTAK, Respondent, vs. KUETEMEYER, Appellant.

*November 14, 1923—January 15, 1924.*

*Death: Child killed in ditch constructed in public highway: Caving in of walls: Negligence: Failure to shore ditch: Judicial notice:.Propensities of children: Contributory negligence: Of child: Of parent: Damages: Evidence: Excessive damages: Reduction or new trial.*

1. A plumbing contractor who had constructed a ditch in a public highway to permit of water and sewer connections and who had knowledge that children played about the ditch, which the evidence showed, under the conditions then existing, was liable to cave in, is *held* negligent in failing to shore up the ditch, although he had constructed a barrier of planks around it, which negligence was the proximate cause of the death of a six-year-old boy who had walked into the ditch and was killed by the caving in of the earth. p. 364.

2. Although streets are dedicated primarily for the purposes of public travel, nevertheless it must be recognized that children are accustomed to use them for the purposes of play; and the rule applicable to children of immature age is different from that with respect to adults.   p. 363.

3. Judicial notice will be taken of the natural and peculiar proclivities of a child six years of age.   p. 364.

4. Upon the evidence in the case and the knowledge which the average adult normal person is presumed to possess regarding the activities of children, it must be presumed that the defendant knew or should have known that children would be liable to enter the ditch after work for the day had ceased; and it is *held* that the defendant was negligent in failing to shore up the walls, and that the answer of the jury that the child was not guilty of contributory negligence is warranted. p. 364.

5. The plaintiff father, who had taken unusual precautions to confine the child within premises where he should not be subjected to danger, was not negligent as a matter of law because the child escaped from the surveillance of its parents for a few minutes; and the answer of the jury that there was no contributory negligence on the part of the child is *held* sustained by the evidence.   p. 365.

6. There is no presumption in favor of parents receiving pecuniary benefit from children after their arrival at majority; and in order to support a verdict for such damages there must be evidence introduced, which may consist of proof as to the ages of the parents, their condition of health, their financial situation, their earning power, and the ability and willingness of the child to share its earnings with the parents.   p. 368.

7. A jury verdict of $3,500, which was reduced by the trial court to $1,800, is excessive to the extent of $800, in the absence of any evidence that the boy would probably contribute to the support of his parents after reaching his majority.  p. 370. CROWNHART, J., dissents.

8. Where a recovery is permitted to stand upon reduction of the damages, the amount should be placed as low as an intelligent jury, properly instructed, in the exercise of a sound judgment on the evidence and law applicable thereto, would be likely to place it.   p. 370.

APPEAL from a judgment of the circuit court for Milwaukee county: G. N. RISJORD, Judge.   *Reversed.*

The action is brought by the plaintiff, the father of Jerome Ptak, an infant six years of age, to recover damages on ac-

count of the death of Jerome caused by the alleged negligence of the defendant.

Concordia avenue is an east-and-west street in the city of Milwaukee and the defendant is a plumbing contractor who, at the time of the accident, had dug a ditch from the center of said avenue to the north curb, the same being thirteen feet long, two and one-half feet wide at the top and about nine feet in depth, and at the bottom being about the width of a spade. This ditch was dug to furnish connections for a house drain and for laying of water-pipe connections, and proper authority had been obtained therefor from the board of public works of the city.

At the time of the accident a portion of the ditch had been filled in with dirt so as to protect the water mains lying at the base thereof, and the portion towards the center of the street was filled, leaving a gradual incline from the south towards the middle of the ditch. The employees of the defendant had been engaged upon this ditch for a period of about three days prior to the happening of the accident and had worked on the day of the accident until about 5 o'clock in the afternoon. Small children had been seen playing about this ditch at various times during its construction, and at the time of the accident quite a number were seen jumping over the ditch and playing upon the highway around the ditch. A few minutes prior to the accident Jerome had been seen walking down the incline from the south end of the ditch, but there is no evidence to show precisely how the accident happened. It appears, however, that within a few minutes after the child was last seen the ditch caved in, somewhere at the middle line between its north and south ends, and the child was found dead upon the removal of the earth subsequent to the cave-in. It also appears that surrounding the ditch were barriers constructed with planks about twelve to fourteen feet in length and between two and three inches thick, which planks rested upon sewer pipes about two feet in height and upon ground thrown out from

the excavation. The soil on both sides of the banks was composed of clay and gravel, and the street itself was surfaced with macadam. About three feet from the top of the ditch was a layer of frost about three inches in thickness, and the sides of the ditch were wet and muddy, it appearing from the evidence that there had been several rainfalls during the period of time in which the ditch was dug, which also appears from the fact that water had gathered and was standing at the lowest point in the ditch. There was evidence in the case by experts engaged in work of sewer and tunnel construction, that in the digging of the ditch the soil, like that referred to, required shoring after reaching a depth of four feet and that the purpose of such shoring is to make the place safe for those in and about the ditch. The case was submitted to the jury on a special verdict, and it was found, first, by direction of the court, that Jerome Ptak was killed by earth falling on him while he was in the ditch; second, that the barriers which the defendant had constructed around the ditch at the time of the accident were not reasonably efficient and safe; third, that the failure to construct proper barriers was the proximate cause of the accident; fourth, that the defendant was negligent in failing to shore the ditch; fifth, that such negligence with respect to shoring was the proximate cause of the accident; sixth, that the defendant, in the exercise of ordinary care, should have known that children were likely to play in and around the ditch in the absence of workmen; seventh, that Jerome Ptak was not guilty of a want of ordinary care which contributed proximately to his death; eighth, that the plaintiff, the father, was not guilty of a want of ordinary care which contributed proximately to produce the child's death; ninth, the damages of the plaintiff were assessed at $3,500.

Upon the rendition of the verdict the defendant's counsel moved the court for judgment for the defendant notwithstanding the verdict, and also to change the answers of the questions in the special verdict unfavorable to the defendant

and for judgment in defendant's favor upon the verdict so changed, and also, in the event of the failure of the court to grant the motions of the defendant's counsel, as aforesaid, that a new trial be granted because the verdict is contrary to law, because it is contrary to the evidence, because it is perverse, and because the damages are excessive, and for other alleged procedural errors. The various motions of the defendant were denied, but the court granted a new trial on the ground of excessive damages unless the plaintiff remitted from said verdict the sum of $1,550 and took judgment for the sum of $1,800, with costs. Thereupon the plaintiff's counsel filed a written consent to the reduction of the verdict to the sum of $1,800, and judgment was entered in plaintiff's favor in accordance with the order of the court, from which judgment defendant appeals.

For the appellant there was a brief by *Freeman & Bendinger* and *George Luebke,* attorneys, and *Schoetz & Williams* and *James T. Krock,* of counsel, all of Milwaukee, and oral argument by *Clifton Williams* and *Henry J. Bendinger.*

For the respondent there was a brief by *Cannon, Bancroft & Waldron* of Milwaukee, and oral argument by *L. H. Bancroft.*

DOERFLER, J. This case was first brought to this court by the defendant upon an appeal from an order overruling a general demurrer to plaintiff's complaint. The complaint demurred to, in substance, alleged negligence on the part of the defendant to erect and maintain reasonably safe barriers in and around the ditch and in failing to properly shore up the ditch. It clearly appeared from the complaint that at the time of the accident the infant was precipitated into the ditch by reason of the cave-in. In the opinion of this court, among other things, it was said, in substance, that the complaint raised a jury issue whether the barriers around the ditch were reasonably efficient and safe in view of the fact

that the defendant knew that children were in the habit of playing around the ditch; and also whether it was not the duty of the defendant to so shore up the ditch at night that it would be reasonably safe for children playing around it.

On the trial of the action, however, it appeared from the undisputed evidence that the accident did not happen while the child was playing around the ditch, but that the cave-in occurred while the infant was in the ditch, and the court, therefore, answered the first question in the special verdict accordingly. There was therefore presented in this case by the evidence a different situation than that which was revealed from the allegations of the complaint demurred to. No case has been decided by this court upon facts substantially identical with those presented herein and no case has been cited to our attention from other courts where a similar situation existed. The question of liability must therefore be determined and based upon general principles of negligence law.

Concordia avenue, where the accident happened, is located in the midst of a dense residential district. Numerous children had from time to time been seen playing upon the street around this ditch. On the evening preceding the accident a large number of children were engaged in play, jumping back and forth over the ditch. The evidence also conclusively establishes the fact that the defendant and those in charge of the construction of the ditch had knowledge that children were in the habit of playing around this ditch. The soil in which the ditch was dug was composed of a mixture of clay and gravel. Reliable experts testified that a ditch dug in such soil, particularly in the spring of the year while the frost was being thawed out by warm weather, was liable to cave in; that there was a layer of frost about three feet down from the surface, of the thickness of about three inches; that there had been several rainfalls during the period of the construction of the ditch, and that water appeared at the deepest point in the ditch, being an accumula-

tion of rain and of the melting frost; that a ditch dug in such soil, and particularly at that time of the year and under the conditions which then existed, required shoring after digging more than four feet in order to make it safe for those in and about the ditch. It may also be said that the evidence is in perfect accord with what one would naturally expect under circumstances existing as above described. The potent fact, which is of vital significance in the determination of the issues involved, and the one which distinguishes this case from many others reported in the books, is that the place of accident was a public highway. It has repeatedly been held that, while streets are dedicated primarily for the purpose of public travel, nevertheless it must be realized and recognized that children are accustomed to use highways for the purposes of play. The rule applicable to children of immature age is different from that with respect to adults. The ditch was under construction for a period of about three days. That it constituted a great attraction for children is conclusively established by the evidence, and it would be difficult to conceive how anything would be more likely to interest and attract children than the appeal of the earth in the form of a ditch like the one in question. Day by day children watched the process of construction and stood around the ditch for that purpose. When the men left their employment the children were seen jumping over the ditch, notwithstanding the existence of the barrier. Children, as a rule, are not wise to the operation of natural laws, and such wisdom comes principally from experience and education. Children like Jerome live in an impressionistic age; their minds are plastic and constitute an ever-ready receptacle for impressions of all kinds. They live in an age of fancy and of imagination, a period of fairies and fairy-tales. They represent a bundle of undeveloped possibilities. Their curiosity leads them everywhere and into everything, and they lack the power of control which comes from experience and education. This child met his death at a time when

the great majority of children are deemed ripe for the kin-
dergarten, where the educational system is begun with play.
Jerome, prior to the accident, had never been seen about this
ditch, for he was carefully guarded by the plaintiff in his
home and in his home surroundings. He had not previously
participated with other children in play about the ditch and
therefore had no occasion to be informed by them or others
of the danger connected therewith. So he came upon the
scene of the accident at a period of life where construction
work of this kind was novel and a curiosity. The evidence
does not show that any of the other children who played
around the ditch or who jumped across it had at any time
made an effort to enter the ditch, but Jerome alone, from
among all of these children, ventured into the ditch to sat-
isfy his childish curiosity. We must take judicial notice of
the natural and peculiar proclivities of a child six years of
age. It has all and more the daring of a grown person
without possessing the element of fear. The very existence
of an incline from the south end of the ditch to its lowest
point acted as an invitation and a temptation to explore the
bottom of this ditch. From the evidence in the case and
from the knowledge which the average adult normal human
being is presumed to possess with respect to the activities
of children, it must be assumed that the defendant knew or
should have known that children would be liable to enter
this ditch at a time when construction work for the day had
ceased. The very fact that the wall caved in, carrying with
it a very large piece of the macadam surface, speaks louder
than oral testimony of the consistency of this soil at that
period of the year. We cannot escape the conclusion that
the defendant was negligent in failing to shore the walls.
Can it be said, as a matter of law, that this unfortunate
infant was contributorily negligent? We are convinced that
the jury's answer in that behalf was well sustained by the
evidence. This can likewise be said of the alleged contribu-
tory negligence of the plaintiff. It appears that unusual

precaution was taken by him to confine his child, in consideration of his age, within premises where he would not be subjected to danger. The fact that this child escaped from the surveillance of its parents for a few minutes does not constitute negligence as a matter of law.

In *Harris v. Eastern Wis. R. & L. Co.* 152 Wis. 627, 140 N. W. 288, an electric light tower was constructed on a highway, and about eighteen feet from the street there was a platform which was reached by steps which were used by employees of the defendant in connection with the lighting system. Children had, to the knowledge of the defendant, been accustomed to climb these steps and to play on and about the platform. A child of tender years, in unfastening an appliance used in connection with the lighting system, caused an injury to a third person upon the highway. It was held in that case, Mr. Chief Justice WINSLOW writing the opinion, as follows:

"The case is certainly novel, but the principles governing it have ceased to be doubtful. It is settled in this jurisdiction that one who maintains in the public street an unguarded object or condition likely to attract children to meddle or play therewith, with the probable result of causing injuries to themselves or others lawfully using the street, is guilty of actionable negligence, providing such person knows or is chargeable with knowledge of the attractiveness of the object or condition and the consequent probability of such meddling and resulting injuries. *Busse v. Rogers,* 120 Wis. 443, 98 N. W. 219; *Kelly v. Southern Wis. R. Co.* 152 Wis. 328, 140 N. W. 60."

In *Meyer v. Menominee & M. L. & T. Co.* 151 Wis. 279, 138 N. W. 1008, the facts appearing from the syllabus in the opinion are as follows: A boy about fourteen years of age, while upon the top of a lumber pile, took hold of defendant's electric light wires and was killed. The lumber pile had, for a year, stood adjacent to a much traveled private road through a lumber yard, was about twenty-four feet high and was easy of access by children, steps to the

top of the pile being formed by projecting boards. For many years lumber had been piled to about the same height at that place, and some fifty children, living near by, were accustomed to play upon the piles. The wires, which were strung upon poles along the side of the road, passed over the piles in question twenty-one inches above the top. There was evidence that they were very slack, sagging much more than is customary; that where they passed over the pile the insulation was worn or rotted off; that defendant had been notified and warned of the condition of the wires and poles about eight months before the accident and that it knew or ought to have known that children were likely to be upon the lumber pile. In that case judgment was rendered in favor of the plaintiff, and upon an appeal to this court the judgment was affirmed, and it was held:

"That the jury were warranted in finding that defendant was negligent in the use of its wires so placed and strung, and that it ought reasonably to have anticipated that some child would be injured thereby; and, there having been no contributory negligence on the part of the deceased or his parents, a recovery was properly had against the defendant, although the boy was a bare licensee or invitee upon the lumber pile."

It would be a waste of valuable space and time to discuss numerous other cases similar to those above referred to. In the *Harris Case* it cannot be said that the platform, located upon the electric light tower, was intended for the purposes of public travel. The fact, however, that the tower and platform were located upon the public highway was deemed of vital importance in the determination of the case, and it was there recognized that the situation there presented was attractive to children, and in view of the knowledge which the defendant had of such fact it was held negligence on the part of the defendant to permit its apparatus to remain unlocked so as to excite the curiosity of children playing on the platform and to tempt them to experiment therewith.

In the *Meyer Case* the accident did not even happen upon the public highway but upon private property. The instant case is much stronger for the plaintiff than the *Harris Case* above referred to, for in that case the injury was wrought by the infant meddling with an apparatus belonging to the defendant. In the instant case Jerome merely entered the excavation, and the injury was solely wrought by the failure of the defendant to properly shore the banks. In the *Harris Case* the accident resulted while the infant was above the surface of the highway, while in the instant case it resulted from the cave-in while the child was beneath the surface of the highway. In neither case could it be said that the place of the injury was used for the purposes of public travel; in each case it can be said that the accident resulted from leaving premises in a dangerous situation attractive to children.

We will therefore rest this portion of our treatment of this case with a quotation from an opinion by Mr. Justice OWEN in *Kressine v. Janesville T. Co.* 175 Wis. 192, 184 N. W. 777:

"Children are all about us wherever we go and whatever we do, especially if it be in the public street. That their presence in the public street is not only an aggravation to adults but dangerous to their safety, all will concede. But that they will be in the public streets at inopportune times and places is a fact that cannot be ignored. From these considerations this court has laid down the rule that 'conservation of child life and safety, as to artificial perils, is one of such importance that ordinary care may well hold every one responsible for creating and maintaining a condition involving any such with reasonable ground for apprehending that children of tender years may probably be allured thereinto.' *Webster v. Corcoran Bros. Co.* 156 Wis. 576, 146 N. W. 815; *Kelly v. Southern Wis. R. Co.* 152 Wis. 328, 140 N. W. 60."

In the *Kressine Case* the traction company had used proper precaution, before leaving its street car upon the highway unattended, to remove the controller, and it was there held that the company had exercised due care; how-

ever, it is clearly intimated in the opinion that if the controller had been left so that it could readily be used by the children, the decision would have been otherwise.

As the assignments of error on the part of the defendant on the subject of liability are all involved and included in the foregoing treatment of the case, we will not give them separate consideration.

Our conclusion is that the verdict of the jury on the subject of liability must be sustained.

Defendant also contends that the verdict of the jury is perverse and that it was actuated by passion and prejudice, as is shown by the size of the verdict. It is possible that the jury was largely influenced in assessing such large damages by the negligence shown in the evidence and that they measured the damages, not in accordance with the pecuniary loss of the plaintiff, but had in mind the value of a human life. The trial court held with the defendant in this branch of the case and granted a new trial; however, it gave plaintiff the option of a reduction of damages to the sum of $1,800. Assuming that the verdict as rendered by the jury is perverse on the subject of damages, we cannot say that prejudice and passion entered into the verdict upon the question of liability. This branch of the case is strongly supported by the evidence and is in accordance with the physical facts and the deductions logically flowing therefrom. The record is devoid of evidence which would support a recovery of damages for pecuniary loss after the arrival of the child at majority. It has been repeatedly and quite consistently held by this court that there is no presumption in favor of parents receiving pecuniary benefit from children after their arrival at majority, and that in order to support a verdict for such damages there must be evidence introduced. And so it has been held that it is proper for the plaintiff to introduce evidence of the ages of the parents, their condition of health, their financial situation, their earning power, and, if possible, the ability and willingness of the child to share its earnings with

its parents. The only evidence in this case upon which to
base a verdict for damages consists of the evidence that the
child was a healthy child. The question involved was fully
considered in *McGonegle v. Wis. G. & E. Co.* 178 Wis. 594,
190 N. W. 471. In that case we held that:

"While the statute creating the cause of action (sec. 4256)
authorizes the jury to give such damages as 'they may deem
fair and just' in reference to the pecuniary injury resulting
from the death of the child, there must be some evidence
justifying an inference that the parents would have received
pecuniary benefits after the attainment of the child's ma-
jority if death had not occurred. True; evidence of this
nature cannot be very direct or conclusive, but it should be
such as the circumstances of the case will permit. The age
of the parents, their state of health, earning capacity and
financial condition, to show the probable necessity for con-
tributions from the child, should appear. The disposition
and ability of the child to contribute should also appear
where that is possible to be shown."

In that case the verdict of $1,200 was sustained by the
trial court and a judgment for that amount was affirmed. In
that case, however, the ages of the parents were shown, also
the earning capacity of the father, the health of both parents,
and the financial condition of the parents. Nearly all of the
cases which have come to this court are referred to in the
*McGonegle Case,* and we have carefully examined these
various cases and find that, perhaps with one exception, the
opinions of this court have been in harmony with the hold-
ing in the *McGonegle Case.* The only exception is found in
the case of *Lomoe v. Superior W., L. & P. Co.* 147 Wis. 5,
132 N. W. 623, where a verdict of the jury for $3,000,
which had been reduced by the court to the sum of $2,500,
was sustained, and that notwithstanding the fact that there
was no evidence in the record showing dependency of the
parents upon the child after the latter reached majority. We
think this case is out of harmony with the numerous other
decisions of this court. It is true that the trial court, in the

instant case, granted a new trial unless the plaintiff consented to a reduction of damages in the sum of $1,550. Under the rule of this court, where a recovery is permitted to stand upon reduction of damages, such amount should be placed as low as an intelligent jury, properly instructed, in the exercise of sound judgment upon the evidence and the law applicable thereto, would be liable to place it. *Baxter v. C. & N. W. R. Co.* 104 Wis. 307, 80 N. W. 644; *Rueping v. C. & N. W. R. Co.* 116 Wis. 625, 93 N. W. 843; *Willette v. Rhinelander P. Co.* 145 Wis. 537, 558, 130 N. W. 853.

It appears from the testimony that plaintiff had intended to give his child a high school and college education. Under such a state of the record there is little evidence upon which to base substantial damages.

Under the rule above quoted, we are of the opinion that the option should have provided for a reduction of the damages to the sum of $1,000.

*By the Court.*—The judgment of the circuit court is reversed, and the case remanded for a new trial, unless plaintiff, within twenty days after receiving written notice of the filing of the *remittitur* in the court below, stipulates, in writing, to the reduction of the amount of the judgment to the sum of $1,000, in which event judgment is ordered to be entered in plaintiff's favor for that amount, with costs as taxed.

The following opinion was filed February 12, 1924:

CROWNHART, J. (*dissenting*). I think the judgment in the court below should stand. The verdict was reduced by the very able trial court to an amount that he thought fair and reasonable. I do not think this court is justified in further reducing the verdict in view of the decided cases cited in *McGonegle v. Wisconsin G. & E. Co.* 178 Wis. 594, 190 N. W. 471. It is true that the evidence is meager on the ques-

tion of damages. At best it could not be otherwise. And that is why the statute in this class of cases has left the amount largely to the discretion of the jury within the maximum fixed by law.

There can be no scientific appraisement of damages in a case like this. The wealth of the parents may fade away. The boy was the potential protector of his parents in their old age. Any investment they might make in his education would be a further assurance of his ability to bear the burden of their support in after life as required by filial affection and by statute. If we apply our every-day experience and common sense, we know that the services of a child, even at a tender age, are valuable to his parents. How many steps he will save his parents by doing the continual errands he is called upon to perform may not be accurately estimated, but they are valuable and should not be offset by his expenses, which are legally incumbent on the parents. I think the decisions amply sustain the judgment. Most of them were given when the dollar had twice its present purchasing power. This should be recognized, for it is evident that the present high prices are largely stabilized and are not merely transient. I think the judgment for $1,800 is fully justified by the decisions of this court, and a larger sum might be sustained by decisions in most other states.

This is the second appeal to this court. When the expenses of the case have been paid, there will be little left for the parents.

I therefore respectfully dissent from so much of the decision as reduces the amount of the judgment.