### TABARY et ux. v. NEW ORLEANS PUBLIC SERVICE, Inc.

### No. 14047.

Court of Appeal of Louisiana. Orleans.

June 27, 1932.

W. J. & H. W. Waguespack, of New Orleans, for appellants.

Alvin R. Christovich and Ivy G. Kittredge, both of New Orleans, for appellee.

JANVIER, J.

Plaintiffs seek recovery in damages for the loss of their four year old son, who died as the result of being crushed under a very heavy street roller attached to a gasoline tractor, which tractor was started into motion by the tampering of older boys during the noon lunch hour and in the absence of the operator, an employee of defendant.

It is charged that the said operator was negligent in leaving unattended upon the city streets machinery attractive to children and so dangerous in uninstructed, unskilled hands as a caterpillar tractor, without taking such precautions as would render impossible the starting of the machine by meddlesome boys and without placing a warning sign thereon. In other words, plaintiffs rely upon the doctrine of attractive nuisance announced many years ago in the so-called "turn-table cases."

Defendant denies that in this state that doctrine is recognized, and it also maintains that there was nothing inherently dangerous about the tractor in question, and that it could not have been started by the meddling of a child so young as to be unaware of the danger of playing with its starting mechanism. Defendant also asserts that it was under no duty to guard against actions of persons old enough and large enough to start it, because such persons might be expected to have knowledge of and to appreciate the dangers pertaining to such acts.

As to some of the facts surrounding the actual starting of the machine, there is dispute in the evidence, but we have come to the conclusion that the accident occurred substantially as follows: Karcher, the operator, at about 12 o'clock noon, drove the machine to a point near the side of the street, stopped it in the customary way by retarding the spark lever, and, after disengaging the clutch and cutting off the gasoline supply, alighted from the driver's seat to the ground. After looking the machine over to see if everything was in order, he drove away in an automobile to obtain his lunch at a place some twelve blocks distant.

Some twenty minutes or so thereafter four school boys congregated on the tractor, and two small boys wandered into the street and began playing near the roller.

Of the four boys who played on the tractor, one Castaing, who took his place in the driver's seat, was thirteen years and two months old, and one Bryan, who was attempting to "crank" the machine, was twelve years and eleven months old, and, apparently, was quite large for his age, being somewhat larger than Castaing.

Castaing, in the driver's seat, was manipulating the control levers, the moving of one of which turned on the electric ignition, and another of which was connected with the carburetor and permitted combustible gas to be sucked into the cylinders of the gasoline engine.

Bryan disengaged from its leather holster the crank with which the machine was customarily started, and, after pushing it in so

that it might become engaged with the engine, he attempted to "turn the engine over," so that it would start. He could not do this by hand, and he therefore jumped upon the handle. After one or two such attempts the engine turned over sufficiently for ignition to take place in the cylinders and the engine started. Almost simultaneously with this Castaing, in the driver's seat, managed to shift the gears into reverse position, and the tractor then started moving backwards. The two very young boys who were playing in the street were caught and one of them, for the death of whom this suit was brought, was badly crushed and later died. The other was somewhat injured, and his injuries form the basis of another suit.

The tractor is a very heavy one, and, instead of the usual wheels, is equipped with endless treads or linked rails, on which it moves. It was constructed without a removable key, or locking switch, being of a type not customarily so equipped by its maker, which maker is one of the largest known manufacturers of such machines.

The district court rendered judgment for defendant, and plaintiffs have appealed.

We are unable to agree with counsel for defendant in their contention that in this state the attractive nuisance doctrine is not recognized. There may be some doubt as to the extent to which it will be applied, where children, as trespassers, wander upon the property of another and are injured by dangerous machinery which they could not have discovered, except for the trespass, or where they fall into uncovered cesspools or cisterns which could not have been seen except for the trespass. But in cases of injuries to children caused by their playing with unguarded and attractive dangers in city streets, the doctrine has been well recognized here. In Westerfield v. Levis, 43 La. Ann. 63, 9 So. 52, 56, is found a suit for damages ex delicto for the death of a very young child, who, after climbing upon a mule-drawn street roller left unattended upon the street, caused the mules to start. Our Supreme Court said:

"In the instant case the boy Richard was in his parents' yard, and was allured by this exposed machine to elude the vigilance of his parents in order to get on the roller. It was dangerous. It was of such a character as to excite his curiosity, and lead to the injury inflicted upon him while he was in the pursuit of his childish instinct. It was an invitation to him by implication. The machine was in a public place, on a public street, in close proximity to the yard of the plaintiff. It was left exposed, unguarded, and unsecured. The child Richard was of that tender age when childish instincts are probably at their fullest intensity.

"The defendants are responsible in damages for the injury inflicted upon him."

We do not feel, however, that the facts of that case are analogous, since in that case there was involved a mule, which may start on the slight prompting of a very young child, and, in fact, may even start on its own initiative, whereas here the machinery was so difficult to start that only a very large boy, with considerable mechanical knowledge, could have succeeded.

It is not the duty of the owner of such machine to so guard it that it will be impossible for any one to tamper with it. It is only the naturally to be expected acts and results against which he must guard, and it is not to be expected that a person old enough and large enough to be successful in his efforts to start such a machine will be so meddlesome as to attempt to do so.

In a case much resembling this the Supreme Court of Wisconsin announced a standard of care which accords so thoroughly with our views that we set it forth at some length:

"The care required under such circumstances is reasonable care. It is the care that men of ordinary prudence would exercise under the same or similar circumstances. The dangers which it was the duty of the company to guard against were such as reasonably might have been anticipated. It was not an insurer of the safety of the children. It was not the duty of the company, as we view it, to so dismantle or disempower the car as to render it harmless under every conceivable circumstance. It was charged with knowledge of ordinary childish conduct, and it was bound to anticipate consequences resulting from such conduct. It was not bound to anticipate consequences resulting from the unusual or extraordinary conduct or the precocious ingenuity displayed by this particular crowd of boys." Kressine v. Janesville Traction Co., 175 Wis. 192, 184 N. W. 777, 779, (1921).

When the operator left the tractor, it was as safe as its designers and manufacturers contemplated that it could be made. Certainly it could not be made dangerous by an immature child. An expert called by plaintiff as a witness testified as to the precautions which he would have taken had he found it necessary to leave such a tractor unattended on a city street, and the precautions set forth by him were identically the same as those taken by Karcher, the operator.

As we have stated, some of the facts are disputed, and we have given our conclusion on these disputed matters without setting forth our reasons. We now deem it advisable to state that it is contended by plaintiffs that Bryan did not jump on the crank of the machine, but merely kicked the radiator, and that this caused the machine to start.

Not only is this manifestly unreasonable, but it is contradicted by the positive evidence of the only eyewitnesses to the accident, Kelly and Petitfils. Petitfils did not see Bryan's foot when it hit the crank, but he saw the boy jump from the top of the radiator to the crank, and he saw that the machine immediately started.

Nor do we believe that the gears of the machine were in reverse position when the engine started, because, had that been so, the cranking of the machine would have made it necessary that the body of the tractor, as well as the engine, be moved by the person cranking it, and Bryan could not possibly have done this. Therefore Castaing must have engaged the reverse gear after the engine started.

We have every feeling of sympathy for the bereaved parents, but we find it necessary to realize that, as was said in Peters v. Pearce et al., 146 La. 902, 84 So. 198, 199: "There is danger in dealing with the question of liability for injury to children of confounding legal obligations with those sentiments which are independent of the law, and rest merely on grounds of feeling, or moral consideration."

Nor do we believe that the placing of a warning sign on the machine would have made it any safer for boys such as those involved in this case. They were well aware of the danger that would result from the starting of the machine, and a mere warning sign would have been of little, if any, avail.

The judgment appealed from is affirmed, at the cost of appellants.

Affirmed.