PAUL and wife, Respondents, vs. HODD and another, Appellants.

*November 7—December 6, 1955.*

For the appellants there was a brief by *William A. Cameron* and *Howard W. Cameron,* both of Rice Lake, and oral argument by *William A. Cameron.*

For the respondents there was a brief by *Douglas, Omernik & Bitney* of Spooner, and oral argument by *E. E. Omernik.*

FAIRCHILD, C. J.   The jury found Gerald Hodd causally negligent as to the management and control of his automobile, and in failing to exercise the skill and judgment in its operation which he possessed.  There is credible evidence which, when reasonably viewed, fairly admits an inference supporting the jury's findings.  That being true, neither the trial court nor this court has authority to change the jury's findings.  *Auster v. Zaspel,* 270 Wis. 368, 71 N. W. (2d) 417.

Appellants urge that the trial court erred in refusing to include in the verdict the appellants' proposed question on assumption of risk by the guest Gary Paul, deceased.  They argue "that the evidence will show that the accident happened

only by reason of the defendant's lack of experience and lack of driving skill." In determining whether Gerald Hodd failed to exercise the skill and judgment he possessed in the operation of his automobile just prior to and at the time of the accident, the jury had evidence before it to show that he had been driving his father's car since December, 1953; that he had driven his own car from the time he acquired it in June, in the neighborhood of 3,200 miles; and that both his and his father's cars had manual shifts. In support of their contention as to this point they insist that there is no evidence "as to any negligent speed, lookout, or inattention." It plainly appears from the record that the trouble developed from appellant driver's increasing his speed to pass a preceding vehicle on a slippery pavement. It appears in the testimony of the witness Thara that a very brief interval of time elapsed between the instant the driver, Gerald Hodd, after passing Thara's vehicle, sought to regain his lane of travel and the tipping over of his automobile. He was going upwards of 40 miles an hour, on a slippery pavement, under conditions which afforded only poor visibility.

As to the acceptance by the guest of the driver with such skill as he possessed, appellants urge that Hodd was an inexperienced driver. The evidence submitted and accepted by the jury in arriving at its verdict, and confirmed by the learned trial judge on motion after verdict, bearing upon the experience of Gerald Hodd as a driver, is that he was eighteen years old; that he had been driving since December, 1953; that he drove to and from the county shop—a distance of at least nine miles—to get to his daily work during part of the time of the summer of 1954; that part of the time he drove an additional nine miles to the deer farm; and that part of the time he drove to and from Exeland to work, a round trip of 60 miles. In addition to driving to and from work, he had driven evenings during the week, and he had driven the

car to school. The jury answered the question with relation to his exercising the skill and judgment he possessed against the appellant driver, and that answer must be sustained.

Appellants' next contention is that this was an unavoidable accident due to skidding and not due to the driver's negligence, insisting that the car skidded on the highly slippery black-top and was out of control throughout the entire distance. However, on the testimony of disinterested witnesses and the physical facts, the jury had before them evidence warranting the findings made by them. It is in evidence that Gerald Hodd, after passing the car ahead of him, drove for some distance along the south lane of the black-top in a slightly diagonal direction to the southeast. He left the black-top, without swerving, at a point 48 to 60 feet west of a driveway crossing the ditch and connecting with the east-west highway at its south edge. He traveled on the soft shoulder in practically a straight line in the same southeasterly direction in which he had been going on the highway, for a distance of about 35 feet and into the ditch. The skidding, if any, occurred at the end of this 35-foot distance. The car, at a point very near the raised edge of the driveway, swung around, tipped over, and landed on the driveway with its four wheels in the air and its front facing south.

The sheriff, who reached the scene of the accident shortly after it occurred, gave testimony to the effect that: There were no skid marks on the black-top west of where the car left it. As the tracks proceeded from the south side of the black-top they went in a practically straight southeasterly direction running alongside the shoulder and toward the ditch. That straight line was about 35 feet long and brought the mark down into the ditch. The driveway was ahead of the straight line and was about 20 inches higher than the ditch. At the east end of that straight line and a few feet

from the driveway was the point at which the marks showed evidence of skidding. There was a plowing action of wheels in the dirt which threw the dirt sidewise toward the east. From the physical facts observed, the witness believed that the front wheels of the car struck the raised portion of the driveway and caused a sweeping curve by the back tires as the car swung around to the right. The tracks tend to show that the car rolled just as it reached the west edge of the driveway.

The coroner, who also made an inspection of the tracks of the Hodd car, testified that they were fairly straight, curving slightly to the right, and that there was evidence that the car skidded where dirt had been moved up and thrown to the east showing a skidding or plowing motion. He further testified that the rear bumper of the Hodd car was parallel and touching the south edge of the highway as the car came to rest on the driveway with the wheels in the air and its front facing south.

The witness Thara, the only eyewitness to the accident, gave the following testimony:

"He [Gerald Hodd] was then a couple of hundred feet behind me and he closed in and passed me, and we both proceeded eastward. I was about 500 feet away from the place of the accident when the Hodd car passed me, or maybe even a little farther. After he returned to his own side of the road he was about 60 or 70 feet ahead of me. When he returned to his own side of the road he would be a little closer than 400 or 430 feet from the place of the accident. I wouldn't say over a couple or 200 or 300 feet, so he traveled for a couple of hundred feet on his own proper side of the road *getting along fine after he passed me but don't forget he wasn't going straight down the road, he was going across until he hit off the black-top.* He was on the south side of the road. . . . When the Hodd car was about 500 feet ahead of

my car he didn't swerve, he just went right off the black-top. . . . As the car crossed the highway it was going southeast." Thara also stated in his testimony that he did not observe the Hodd car doing any zigzagging before it went into the ditch, and that he observed the car all the time from the time it passed him until it went into the ditch.

Thus it is clear from the testimony of competent and disinterested witnesses that the theory of unavoidable accident due to skidding is not applicable to the instant case. As a result of inattention and negligence in management and control, Hodd went straight off the road and created the emergency in which he found himself. The skidding did not occur until he tried to extricate himself from his position in the ditch after the car had made a sudden right turn.

The trial court correctly ruled that the evidence sustained the conclusion of the jury that, under the circumstances existing, Hodd was not an inexperienced driver and that he did not exercise the skill and judgment he possessed. The verdict of the jury as to liability must be sustained.

However, as to appellants' claim that the damages awarded by the jury were excessive, we find that the evidence does not justify an award to respondents of $6,400 for loss of services of their son. Appellants do not object to the award of $2,500 for loss of companionship and society. It is conceded by appellants that Gary Paul was a boy of good character and did help his father in the matter of chores, milking, etc. He was about seventeen and one-half years old at the time of his death. There would be another year at high school during which time he could assist with the chores as had been his custom. But the evidence shows that after graduation he was to enter college. The amount which may be allowed under circumstances as they are here, arising from a relationship such as we are concerned with, must be arrived at under the recognized rule that damages are a sum of money which

the law awards as pecuniary compensation. The facts of each case must be the basis upon which the amount in each case is predicated. The rule governing is well discussed in both the majority opinion and the dissenting opinion in the case of *Ptak v. Kuetemeyer,* 182 Wis. 357, 370, 196 N. W. 855, 197 N. W. 363. In that case there had been a reduction of damages, and there are there cited cases expounding the rule for such allowance. The late Mr. Justice DOERFLER, in concluding his opinion said: "It appears from the testimony that plaintiff had intended to give his child a high school and college education. Under such a state of the record there is little evidence upon which to base substantial damages." And he proceeded to hold under the rule that there should be an option providing a reduction of damages rather than a positive order for a new trial.

It is our opinion from the evidence submitted that the lowest amount which an impartial jury, properly instructed, should allow for loss of services would be $1,716. That amount is based upon a calculation of services rendered up to the time of engaging in his college effort.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded for a new trial as to damages only, unless plaintiffs, within twenty days after receiving written notice of the filing of the remittitur in the circuit court, stipulate in writing to the reduction of the amount of the judgment to the sum of $4,802.73, in which event the judgment is ordered to be entered in respondents' favor for that amount.