SMITH and wife, Respondents, v. FLASH CITY TRANSIT COMPANY and another, Appellants.

*No. 293. Submitted under sec. (Rule) 251.54 January 7, 1975.—*
*Decided February 4, 1975.*
(Also reported in 225 N. W. 2d 481.)

596

The cause was submitted for the appellants on the briefs of *Edward Rudolph* of Milwaukee; and for the respondents on the brief of *Weber & Gerard* of Racine.

ROBERT W. HANSEN, J. The primary issue on this appeal is whether the trial court erred in changing the jury's special verdict answer as to the bus driver's negligence from "No" to "Yes." Before submitting the case to the jury, and, in discussing proposed instructions to the jury, the trial court said:

"Well, as I recorded the testimony of the bus driver, Mr. Dixon, he testified that he first saw the vehicle which he said crossed in front of him when it was in front of him with his [the] front bumper at the curb-

line waiting for pedestrians to pass in front of him, which would mean that that car was in the exact position and across his lane of travel in part which would mean that the car was at least 15 feet in length . . . [and] would have been in that position as he was coming down the street, and not to see it until he was right on top of it would give rise to an argument on look-out. He also did, however, express another theory that he first saw it when he was coming toward him with his front end on the driver's side of his vehicle and it passed in front of him and stopped. The jury has heard both, or has heard complete testimony. It will be up to them to evaluate and pass upon with respect to credibility. . . ."

With the only evidence offered on the issue of the driver's lookout being testimony of the bus driver himself, there was, as the trial court indicated, testimony on which a finding of negligence as to lookout could be based. The bus driver testified that:

"Q. Well, where was that car when you first saw it?
"A. In front of me.
"Q. In front of you?
"A. Right.
"Q. Now, at the time you first saw it, where was this car with respect to the south—with respect to the north curbline of Washington Avenue? Do you know what I mean by the north curbline? Where was the front of this car with respect to the north curbline when you first saw it?
"A. Right at the curb.
"Q. So it was at the curb?
"A. The front end."

Accepting this testimony, the jury could have concluded that the bus driver did not see the other vehicle at any time prior to its front end being at the north curbline of Washington Avenue, where the vehicle was in a stopped position. So accepting and so concluding, the jury would find the conclusion compelled that the bus driver was negligent as to lookout. But such was not the

only testimony before the jury. What the trial court, at the time of considering jury instructions, termed "another theory" is a reference to testimony of the bus driver as follows:

"*Q.* If I draw the front end in this way would this be the way it was at the time you first saw it?

"*A.* Yes, sir, that is when I saw him, when he pulled right in front of me.

"*Q.* When he was at the curb the front of his—

"*A.* When he stopped he was right at the curb.

"*Q.* My question is where was that car when you first observed it?

"*A.* First observed it, he was turning in front of me.

"*Q.* All right. Now, where was he, I didn't ask you what he was doing, but where was he at the time you first observed him?

"*A.* In front of me.

"*Q.* In front of you?

"*A.* Yes.

"*Q.* All right. Where was the front end of his car with respect to this north curbline at the time you first observed him?

"*A.* Then the front of his car was practically on my end, my driver's side of the bus."

This testimony presents the situation of a bus driver seeing a car on the driver's side of the bus, suddenly cutting in front of the bus, requiring the driver to brake the bus to a sudden stop to avoid hitting the vehicle turning in front of him. Clearly, as the trial court stated at the time of considering instructions to the jury, such testimony would warrant a jury finding of non-negligence on the part of the bus driver. As clearly, such testimony makes inappropriate here the holding of the trial court, at the time of motions after verdict, that the bus driver was here negligent as a matter of law as to lookout because the bus driver ". . . never saw the movement of that other vehicle and if it moved he should have seen it. He saw it at its stopped position at the last moment and jammed on his brakes. . . ."

There is testimony in this record to support such conclusion, but it is not the only testimony. There is also the bus driver's testimony that when he first saw the other vehicle its front end was on the driver's side of the bus, turning in front of the bus. As the trial court said, at the time of considering instructions to the jury, of the two versions of what happened: "The jury has heard both," and it "will be up to them to evaluate and pass upon with respect to credibility."

Whether the bus driver was guilty of negligence as to lookout presented a jury question. There was here credible evidence which, reasonably viewed, fairly admitted an inference supporting the jury's finding of non-negligence on the part of the bus driver. (*See: Leatherman v. Garza* (1968), 39 Wis. 2d 378, 386, 159 N. W. 2d 18.) That being true, neither the trial court nor this court has authority to change the jury's finding. (*Id.* at page 386, citing *Paul v. Hodd* (1955), 271 Wis. 278, 280, 73 N. W. 2d 412.) A trial court is not justified in setting aside a verdict if there is credible evidence to support the jury findings. (*Id.* at page 386, citing *DeKeyser v. Milwaukee Automobile Ins. Co.* (1941), 236 Wis. 419, 424, 295 N. W. 755.) If there is credible evidence which supports a jury verdict, the action of a trial court in changing a jury verdict on the ground that it must be changed as a matter of law ". . . will be set aside on appeal." (*Id.* at page 387, citing *Delvaux v. Kewaunee, G. B. & W. Ry.* (1918), 167 Wis. 586, 167 N. W. 438.)

With credible evidence in this record warranting the jury finding of nonnegligence of the bus driver as to lookout, no basis for changing the jury answer as to negligence of the bus driver is added by the trial court holding, as a matter of law, that the driver ". . . failed to exercise ordinary care for the safety of his passengers," because ". . . he made no observation where his

passengers were in the bus, but did subsequently bring his bus to an abrupt halt. . . ." As the trial court observed, it is common knowledge that when passengers want to get off a bus at the next stop they signal the driver by means of a buzzer and then get up and move to the exit, standing rather than being seated. But, as this court has clearly held, ". . . While a high degree of care is required, the bus driver is not required to ascertain if all passengers are seated before starting the bus *nor should he strike another car to avoid a sudden stop.*" (Emphasis supplied.) (*Jacobs v. Milwaukee & Suburban Transport Corp.* (1969), 41 Wis. 2d 661, 665, 165 N. W. 2d 162.)

While we believe the jury could have found the bus driver was causally negligent under the circumstances and on this record, we are of the opinion that the issue of his negligence was for the jury to determine, and that the jury finding of nonnegligence on the part of the bus driver is supported by credible evidence. It follows that it was error for the trial court to change the jury's answer to the question inquiring as to the negligence of the bus driver.

*By the Court.*—Judgment reversed and cause remanded with directions to reinstate the jury verdict and enter judgment for the defendants.